438 S.E.2d 847

**STATE of West Virginia ex rel. Billy Ray C., Jr., Relator,**

v.

**Major General Joseph J. SKAFF, Secretary, West Virginia Department of Military Affairs and Public Safety; Colonel Thomas L. Kirk, Superintendent of the West Virginia Division of Public Safety; and Larry Hite, David Shirlaw and Kelly George, Members of the West Virginia State Board of Risk and Insurance Management, Respondents.**

No. 21894.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1993.

Decided Dec. 15, 1993.

Daniel F. Hedges, Charleston, Franklin Cleckley, Morgantown, for relator.

Theresa Sage, Asst. Atty. Gen., South Charleston, for respondents Major General Joseph J. Skaff, Secretary, and Colonel Thomas L. Kirk, Superintendent.

Robert Nunley, Sr. Asst. Atty. Gen., Charleston, for respondent West Virginia State Bd. of Risk and Ins. Management.

MILLER, Justice:

In this original mandamus action, the relator, Billy Ray C., Jr.,[1] a seventeen-year-old juvenile, contends that two of the respondents, the Major General Joseph J. Skaff, Secretary of the West Virginia Department of Military Affairs and Public Safety (Secretary), and Colonel Thomas L. Kirk, Superintendent of the Division of Public Safety (Superintendent), violated his constitutional rights under Section 10 of Article III (due process) and Section 17 of Article III (open courts) of the West Virginia Constitution, by failing to provide the relator an opportunity to be heard in regard to his allegations of physical brutality against a State Police officer.

The relator also contends that the other respondents, members of the West Virginia State Board of Risk and Insurance Management (Board of Risk), have failed to create an adequate procedure to identify potential liability claims pursuant to W.Va.Code, 29–12–5 (1986); and that those same respondents have failed to require the other respondents, the Secretary and the Superintendent, to file with the Board of Risk statutorily required forms describing the activities and responsibilities engaged in by the agencies under their control pursuant to W.Va.Code, 29–12–6.

The relator in his petition states that he was the victim of an unwarranted physical attack by a State Police officer. After the incident, he sent a letter to the State Police headquarters alleging that he had been "beat up" by the officer,[2] and requesting that "some action" be taken against the officer. The relator contends that an officer from the same detachment as the abusive officer, and who also has a reputation for brutality, was assigned to investigate the relator's allegations. The relator claims that the investigating officer threatened him with further charges if he did not withdraw the complaint against the abusive officer. The relator also states that a second officer was then assigned to investigate the allegations, but that no action was taken against the abusive officer. The respondents neither admit nor deny these charges.

The relator seeks the issuance of a writ of mandamus against the Secretary and the Superintendent ordering them to create a system whereby allegations of misconduct against State Police officers are investigated by an impartial entity. He also seeks a writ of mandamus compelling the Board of Risk to issue rules and regulations under W.Va. Code, 29–12–5, requiring the West Virginia Division of Public Safety to provide the Board with necessary information relating to incidents that expose the State to potential liability under its liability insurance policy.

## I.

In Syllabus Point 1 of *Smith v. West Virginia State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680 (1982), we stated our traditional criteria regarding the issuance of a writ of mandamus:

> "'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the peti-

---

1. In cases involving sensitive facts, we follow our traditional practice of not using last names to avoid stigmatizing the involved parties. *See, e.g., State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990); *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987).

2. The relator contends that he suffered $1000 in medical expenses as a result of the attack.

tioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969)."

We went on to state in *Smith:*

"Our rule regarding utilization of a writ of mandamus must be read against the back drop of Judge Haymond's statement in *Carter v. City of Bluefield,* 132 W.Va. 881, 897, 54 S.E.2d 747, 757 (1949):

'The tendency in this jurisdiction is to enlarge and advance the scope of the remedy of mandamus, rather than to restrict and limit it, in order to afford the relief a party is entitled to when there is no other adequate and complete legal remedy.' "

170 W.Va. at 595, 295 S.E.2d at 683.

With the foregoing in mind, we turn to the grievances alleged and the relief sought by the relator.

### II.

The relator seeks a writ of mandamus to compel the Secretary and the Superintendent to create an impartial procedure for the investigation of allegations of abuse on the part of State Police officers. Addressing first the question of the relator's clear legal right to the foregoing relief, we note that whether one has a clear legal right to relief "is generally a question of standing. Thus, where the individual has a special interest in the sense that he is part of the class that is being affected by the action then he ordinarily is found to have a clear legal right." *Smith v. West Virginia State Bd. of Educ.,* 170 W.Va. at 596, 295 S.E.2d at 683 (Citation omitted). The relator partially bases his claim to relief upon W.Va.Code, 15–2–21 (1977), which states, in pertinent part:

"The superintendent may suspend, demote in rank or discharge from the service any member of the department of public safety for any of the following causes: Refusing to obey the lawful orders of his superior officer, neglect of duty, drunkenness, immorality, inefficiency, abuse of his authority, interference with the lawful right of any person, participation in political activities, primaries, conventions or elections, conviction for a crime or any action proscribed under this article. *The superintendent shall cause an investigation to be made when notice of any one or more of such causes is brought to his attention* and shall determine whether or not the member should be suspended, demoted in rank or discharged." (Emphasis added).

We find that W.Va.Code, 15–2–21, gives the relator a right to bring to the attention of the Superintendent any of the statutorily enumerated causes that warrant the suspension, demotion in rank, or discharge of a State Police officer. One of the enumerated causes therein is "abuse of his authority[.]" Courts have recognized that the use of excessive force by a police officer constitutes an abuse of authority. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Martin v. Gentile,* 849 F.2d 863 (4th Cir.1988); *Clark v. Beville,* 730 F.2d 739 (11th Cir.1984); *Wagner v. City of Omaha,* 236 Neb. 843, 464 N.W.2d 175 (1991); *State v. Wright,* 310 Or. 430, 799 P.2d 642 (1990). *Cf. Harrah v. Leverette,* 165 W.Va. 665, 271 S.E.2d 322 (1980) (prison guards' abuse of prisoners).

The right of the relator to bring allegations of abuse by a State Police officer to the attention of the Superintendent is entwined with a legal duty that the Superintendent must perform. Under the foregoing Code section, the Superintendent, upon receipt of notice, "shall cause an investigation to be made" of the allegations against the officer. W.Va.Code, 15–2–21. The use of the word "shall" traditionally is given a mandatory connotation in this jurisdiction. As stated in Syllabus Point 1 of *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982):

"It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."

Thus, under W.Va.Code, 15–2–21, a person who has been subjected to the use of excessive physical force by a State Police officer has the right to file a complaint with the

Superintendent. Under this same section, the Superintendent is required to investigate the complaint.

The final element of the test for judging whether relief in mandamus is appropriate is whether there is another adequate remedy. As we stated in Syllabus Point 2 of *Stowers v. Blackburn*, 141 W.Va. 328, 90 S.E.2d 277 (1955): "Mandamus will not be denied because there is another remedy, unless such other remedy is equally beneficial, convenient and effective." In *Smith, supra*, we acknowledged that, in matters of "substantial public policy," we will ordinarily accept a writ of mandamus.[3] We believe that ensuring that those entrusted by law to guard the public safety do not abuse their authority is a matter of a "substantial public policy," and that relief in mandamus is appropriate.

In this case, an investigation was conducted. However, it appears that there are no guidelines or rules or regulations promulgated by the Superintendent that outline the procedure to be followed when such an investigation is conducted.

In the past, we have required public officials charged with a duty to carry out certain laws to file rules and regulations implementing them and to report to this Court the corrective action that has been undertaken. For example, in *Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986), we found conditions at the Moundsville Penitentiary to be unconstitutional and required the Department of Corrections to furnish us with a plan to remedy the conditions.

More recently, in *In the Matter of an Investigation of the West Virginia State Police Crime Laboratory, Serology Division*, 190 W.Va. 321, 328, 438 S.E.2d 501, 508 (1993), we required the Superintendent to file a report with this Court outlining steps to be taken to ensure that the State Police forensic laboratory becomes certified by the American Society of Crime Laboratory Directors. In *State ex rel. Smith v. Skaff*, 187 W.Va. 651, 655, 420 S.E.2d 922, 926 (1992), the Division of Corrections was required "to develop a plan ... to provide some temporary arrangement to meet its obligation to house and detain all those lawfully sentenced to a state penal facility until such time as the new prison is completed." In *Smith v. West Virginia Board of Education*, 170 W.Va. at 601, 295 S.E.2d at 688, the State Board of Education was ordered "to promulgate corporal punishment regulations not inconsistent with the standards set out [in the opinion]." The Department of Corrections was ordered in *Harrah v. Leverette*, 165 W.Va. at 683, 271 S.E.2d at 332–33, to provide this Court with a plan, tailored to each aggrieved prisoner's status after the Department unconstitutionally punished prisoners following a prison riot. The Department also was ordered to submit to this Court a plan for the implementation of psychological testing of correctional officers.

■ We believe that implicit within the Superintendent's mandatory duty to investigate allegations of misconduct under W.Va. Code, 15-2–21, there is a duty to promulgate formal, written investigation procedures. These procedures should outline (1) how a citizen may notify the Superintendent of alleged misconduct by a State Police officer, and (2) the specific procedure to be followed to ensure that a thorough investigation is conducted by an impartial and neutral party.[4] We recommend the investigation be conducted by either (1) a specially trained officer or civilian investigator or (2) an investigative panel.

These procedures also should require that a report of the investigation be given to the Superintendent on which to base his decision.

---

3. In *Smith*, 170 W.Va. at 597, 295 S.E.2d at 684, we stated:
   "There is a premise, perhaps not specifically articulated, in our mandamus cases that where the legal issue is of a substantial public policy nature, we will accept an original writ of mandamus rather than force the petitioner to try the issue through administrative proceedings or in a lower court." (Footnote and citations omitted).

4. See Syllabus Point 2 of *Harrah, supra*, where we stated: "A disciplinary committee should be neutral and detached and should not have any member with personal knowledge of the incidents charged." Whatever form the investigative unit takes, the procedures should ensure that no investigator is an involved party or a close coworker of the accused officer.

This report should include a full description of the information gathered in the investigation, including the stories of all participants, witnesses, and the victim or complainant. The report also should include a recommended disposition of the complaint. After receipt of the report, the Superintendent must act on it and notify the alleged victim or complainant, in writing, of his final decision in the matter, even when the Superintendent decides not to take any action against the accused officer.[5] In accordance with our past practice, we direct that the Superintendent shall forward to the Clerk of this Court, within 120 days from the date of this opinion, a copy of the procedures ordered herein.

## III.

■ The relator also seeks to compel the respondent members of the Board of Risk to obtain reports from the Superintendent concerning any incidents potentially involving the liability of the State. We note in this regard that W.Va.Code, 29–12–5(a) (1986), states, in pertinent part:

"The board [of risk] is given the power and authority to make rules and regulations governing its functions and operations....

\*     \*     \*

"The board is hereby authorized and empowered to negotiate and effect settlement of any and all insurance claims arising on or incident to losses of and damages to state properties, activities and responsibilities hereunder and shall have authority to execute and deliver proper releases of all such claims when settled. The board may adopt rules and procedures for handling, negotiating and settlement of all such claims. All such settlements and releases shall be effected with the knowledge and consent of the attorney general."

In *Smith*, 170 W.Va. at 596, 295 S.E.2d at 683, we stated that a petitioner in a mandamus proceeding may enforce a public right based upon a statute that affects the public at large: "[W]here the right sought to be

enforced is a public one in the sense that it is based upon a general statute or affects the public at large the mandamus proceeding can be brought by any citizen, taxpayer, or voter." (Citations omitted).

In this case, the relator is attempting to compel the Board of Risk to create a procedure whereby the Board is notified of any incidents of potential liability involving the Division of Public Safety or other State agency where the Board could be called upon to attempt to settle a claim against an agency. W.Va.Code, 29–12–5, clearly affects the public at large in the sense that public funds finance the State's insurance that is used for any settlement entered into by the Board of Risk. Moreover, when combined with the Board of Risk's rule-making power under W.Va.Code, 29–12–5, the Board's authority to investigate and settle claims implies that the Board *must* create some procedure whereby it is promptly notified of incidents of potential liability so that it may intelligently exercise its authority to investigate and settle such claims.

Thus, we find that under W.Va.Code, 29–12–5, which delegates to the Board of Risk the authority to investigate and settle claims under the State's liability insurance, the Board of Risk is required to promulgate rules or regulations for State agencies covered by the State's liability insurance policy that will enable the Board to promptly identify potential liability claims against the State.

■ The Board's rules or regulations should specify the procedure the Division of Public Safety and other State agencies similarly situated should follow to notify the Board of Risk of incidents that could create a potential liability under the State's liability insurance policy. These rules or regulations should include an appropriate form by which the Superintendent, or other director of a State agency, or a duly appointed designee thereof, can make formal notification of incidents of potential liability to the Board of Risk. The Board of Risk shall submit to the Clerk of this Court, within 120 days from the date of this opinion, a copy of the rules or

---

5. W.Va.Code, 15–2–21, outlines the procedures the Superintendent must follow when he imposes punishment against the offending officer. These

are procedural provisions for the officer's protection.

regulations and the form to be utilized by the Superintendent and other State agency directors.[6]

Writ granted as moulded.

---

**6.** The relator also asserts the right to mandamus relief in regard to a determination by this Court whether State Police officers may be held individually responsible for "malicious acts that warrant imposition of punitive damages." We fail to see what legal right the relator has to the relief sought. We note, however, that we discussed the payment of punitive damages under insurance policies in *Hensley v. Erie Insurance Co.,* 168 W.Va. 172, 283 S.E.2d 227 (1981).