464 S.E.2d 576

**Kenneth F. STATEN, Appellee,**

**v.**

**Jean DEAN, Mayor of the City
of Huntington, a Municipal
Corporation, Appellant.**

**No. 22640.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 1995.

Decided Oct. 26, 1995.

R.R. Fredeking, II, Fredeking & Fredeking, Huntington, for Appellee.

Michael J. Farrell, Charlotte A. Hoffman, Farrell & Farrell, L.C., Huntington, for Appellant.

RECHT, Justice:

The Mayor of the City of Huntington appeals a writ of mandamus issued by the Circuit Court of Cabell County ordering the Mayor to comply with the recommendation of the Police Civil Service Commission of the City of Huntington to reinstate Kenneth F. Staten as a city police officer. The Mayor has refused to reinstate Staten on the basis that he was not eligible for reinstatement under *W.Va.Code* 8–14–12 (1972).[1]

---

1. *W.Va.Code* 8–14–12 (1972) states as follows:

The policemen's civil service commission in each Class I and Class II city shall require individuals applying for admission to any competitive examination provided for under the civil service provisions of this article or under the rules and regulations of said commission to file in its office, within a reasonable time prior to the proposed examination, a formal application in which the applicant shall state under oath or affirmation:

(1) His full name, residence and post-office address;

(2) His United States citizenship, age and the place and date of his birth;

(3) His state of health and his physical capacity for the public service;

(4) His business and employments and residences for at least three previous years; and

(5) Such other information as may reasonably be required, touching upon the applicant's qualifications and fitness for the public service.

Blank forms for such applications shall be furnished by the commission, without charge, to all individuals requesting the same. The commission may require, in connection with such application, such certificates of citizens, physicians and others, having pertinent knowledge concerning the applicant, as the good of the service may require.

No application for original appointment shall be received if the individual applying is less than eighteen years of age or more than thirty-five years of age at the date of his application: Provided, That in the event any applicant formerly served upon the paid police department of the city to which he makes application, for a period of more than his probationary period, and resigned from the depart-

Staten was originally appointed as a police officer with the City of Huntington Police Department on September 15, 1978. Some time between 1991–92, a paternity action was instituted against Staten in the Circuit Court of Cabell County. In late 1992, a federal investigation was conducted into allegations that Staten had attempted to falsify the results of a court ordered blood test, which would determine whether he was the father in the paternity suit. The investigation revealed that Staten had contacted Lynette Black, an employee at Cabell Huntington Hospital and requested her assistance in falsifying the test results. Staten agreed to pay Black and another hospital employee a sum of money to falsify the results to disestablish paternity in order to avoid paying child support. If proven, these allegations could amount to violations of federal law (mail fraud, 18 U.S.C.A. § 1341 (West Supp. 1995)) and state laws (obstruction of justice, *W.Va.Code* 61–5–27 (Supp.1995); and conspiracy, *W.Va.Code* 61–10–31 (1971)).

In December 1992, the office of the United States Attorney advised Staten that the Department of Justice was prepared to prosecute him for mail fraud in the United States District Court for the Southern District of West Virginia. As a result of the allegations and investigation, and in an effort to avoid the unpleasant alternative of a criminal proceeding, Staten entered into a Federal Pretrial Diversion Program, the cornerstone of which was an Agreement for Pretrial Diversion ("Agreement").

This Agreement was between Staten and the United States of America and the preamble reads, "As a result of an investigation conducted by federal law enforcement officials, it appears that you have committed an offense in violation of federal law, to-wit: a violation of Title 18, United States Code, Section 1341 (mail fraud), [sic] or about October, 1992." Among other conditions, the Agreement mandated that, "upon placement in the Pretrial Diversion Program you will immediately resign your employment at City of Huntington."

Staten signed the agreement on January 22, 1993, and his resignation from the police force was effective on that same date. The United States District Court for the Southern District of West Virginia approved the agreement on May 21, 1993, and Staten was required to serve one year on probation.[2] The Agreement was placed under seal by the court.

On April 6, 1994, Staten requested reinstatement to the City of Huntington Police Department pursuant to *W.Va.Code* 8–14–12 (1972). The Police Civil Service Commission ("Commission") reviewed the application on June 6, 1994. A majority of the Commission decided to recommend that Staten be rein-

---

ment at a time when there were no charges of misconduct or other misfeasance pending against such applicant, within a period of two years next preceding the date of his application, and at the time of his application resides within the corporate limits of the city in which the paid police department to which he seeks appointment by reinstatement is located, then such individual shall be eligible for appointment by reinstatement in the discretion of the policemen's civil service commission, even though such applicant shall be over the age of thirty-five years, and such applicant, providing his former term of service so justifies, may be appointed by reinstatement to the paid police department without a competitive examination but such applicant shall undergo a medical examination; and if such individual shall be so appointed by reinstatement to the paid police department, he shall be the lowest in rank in the department next above the probationers of the department.

Any applicant for original appointment must have been a resident for one year, during some period of time prior to the date of his application, of the city in which he seeks to become a member of the paid police department: Provided, That if the commission deems it necessary it may consider for original appointment or for reinstatement under the preceding proviso of this section, applicants who are not residents of the city but who have been residents of the county in which the city or any portion of the territory thereof is located for a period of at least one year.

2. The terms and conditions of the Agreement were stipulated between the parties to this appeal and inform that Staten was on probation for a period of one year. The record does not contain a formal order releasing Staten from the Agreement for Pretrial Diversion, presumably because no order is entered once a participant successfully completes a Pretrial Diversion Program. Staten was released from the sanctions of the Agreement on March 18, 1994.

stated to the police force.[3] The Mayor of Huntington, however, refused to reinstate Staten or place him on the city payroll. On June 16, 1994, Staten filed a petition for writ of mandamus in the Circuit Court of Cabell County to compel the Mayor to reinstate him based upon the Commission's decision to certify his eligibility for reinstatement. The Mayor's refusal to reinstate Staten is predicated on the recognition that Staten had no right to be reinstated and correspondingly she was under no duty to reinstate him. The circuit court issued a rule to show cause and subsequently entered a writ of mandamus, directing the Mayor of the City of Huntington to reinstate Staten.[4]

## I.

### STANDARD OF REVIEW

■ The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo. Applying this de novo standard, we agree with the Mayor's reasoning in refusing to reinstate Staten and accordingly reverse the decision of the Circuit Court of Cabell County and remand to that court with directions to dissolve the writ previously awarded.

■ " 'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of re-

spondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' " Syllabus Point 1, *State ex rel. Billy Ray C. v. Skaff,* 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). "To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded." Syllabus Point 1, *Dadisman v. Moore,* 181 W.Va. 779, 384 S.E.2d 816 (1989); Syllabus Point 2, *State ex rel. Cooke v. Jarrell,* 154 W.Va. 542, 177 S.E.2d 214 (1970).

## II.

### ELIGIBILITY FOR REINSTATEMENT UNDER *W.VA.CODE* 8–14–12 (1972)

The core issue governing Staten's right to reinstatement and the Mayor's duty to recognize that right is whether Staten resigned from the police force at a time when there were charges of misconduct or other misfeasance pending against him, making him ineligible for reinstatement.

The West Virginia Legislature has made it clear that a police officer who resigns in the face of charges of misconduct or misfeasance is ineligible for reinstatement. The eligibility requirements for reinstatement are mandated by statute and the code allows for reinstatement, "[p]rovided, [t]hat in the event

---

**3.** There were three members of the Police Civil Service Commission who reviewed Staten's application. The transcript of their meeting is replete with comments from Commissioner Dale Burns that he was a friend of Staten and he did not believe the actions of Staten were misconduct, but rather were a result of stress and bad judgment. Burns speculated that Staten was being victimized. Burns was subsequently removed from his position as Commissioner by the Mayor for his certification of Staten. Burns has challenged that removal.

Commissioner Coleman Trainor noted that there was political pressure urging him to reinstate Staten and he did not feel that Staten's actions rose to the level of misconduct or other misfeasance. Trainor likened Staten's actions to "a dumb mistake." Trainor was also removed from the Commission as a result of the decision and he voluntarily resigned.

The third member of the Commission, Commissioner W.F. Buchanan voted not to reinstate

Staten because he believed the actions did rise to the level of misconduct or misfeasance, prohibiting reinstatement.

**4.** Appellant raises the failure of the circuit court to allow a full evidentiary hearing despite representations that the court would conduct such a hearing prior to ruling on the Petition seeking relief by writ of mandamus. On August 9, 1994, the Circuit Court of Cabell County entered an Order continuing the evidentiary hearing on the writ of mandamus. Although no subsequent hearing was scheduled, the circuit court entered an order on October 6, 1994, granting the writ of mandamus and commanding reinstatement of Staten. Appellant acknowledged during oral argument that despite the denial of a formal opportunity to be heard, the record was sufficiently developed in order to support the legal underpinnings of her resistance to Appellee's reinstatement.

any applicant formerly served upon the paid police department of the city to which he makes application, for a period of more than his probationary period, and *resigned from the department at a time when there were no charges of misconduct or other misfeasance pending against such applicant*, within a period of two years next preceding the date of his application, and at the time of his application resides within the corporate limits of the city in which the paid police department to which he seeks appointment by reinstatement is located, then such individual *shall be eligible* for appointment by reinstatement in the discretion of the policemen's civil service commission...." *W.Va.Code* 8–14–12 (1972) (emphasis added). All of these requirements must coexist in order for an applicant to be eligible for reinstatement and entitled to review by the Commission. In the event that charges of misconduct or other misfeasance are pending at the time of resignation, the Commission does not have the power to review an application for reinstatement because that person is simply not eligible for reinstatement.

■ We hold that under *W.Va.Code* 8–14–12 (1972), eligibility for reinstatement to a municipal police department is governed by events that were extant at the time of the resignation and not at the time of reinstatement. Accordingly, Staten can only possess a right to be reinstated if at the time of his resignation on January 22, 1993, there were no charges of misconduct or other misfeasance.

### III.

### WAS STATEN ELIGIBLE FOR REINSTATEMENT?

■ The Police Civil Service Commission has the responsibility for reviewing applica-

tions for reinstatement to the police department. *W.Va.Code* 8–14–12 (1972). In the case, *sub judice*, the Commission by a majority vote recommended to reinstate Staten, after debating whether he had resigned his position with the police force under charges of misconduct or other misfeasance. The Commission made no express findings as to whether Staten resigned under charges of misconduct or other misfeasance. The Commission merely offered a conclusory determination that Staten was eligible for reinstatement.

■ Staten argues that the Mayor of Huntington has a legal duty to implement the Commission's recommendation to reinstate him. *See Meek v. Pugh*, 186 W.Va. 609, 413 S.E.2d 666 (1991), and *Gartin v. Fiedler*, 129 W.Va. 40, 38 S.E.2d 352 (1946). This position might warrant some consideration if the Police Civil Service Commission had prepared any findings of fact or conclusions of law. See Syllabus Point 1, *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971), which provides that, "A final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law."

The Commission's memorandum to the Mayor dated June 7, 1994, was minimalist, at best. The memorandum is vacant of any findings of fact or conclusions of law.[5] The circuit court ruled that the Commission's findings were not clearly erroneous; its conclusions of law were not mistaken; and the decision to rehire was not a misapplication of the law. It is difficult for this Court to understand how the circuit court could have based its determinations on the Commission's findings and conclusions when the Commission's memorandum did not contain any such findings and conclusions.[6]

---

**5.** The entire memorandum is as follows:

MEMORANDUM
TO: Mayor Jean Dean
FROM: W.F. Buchanan, President
DATE: June 7, 1994
SUBJECT: Reinstatement—Kenneth Staten
This is to advise you that the Huntington Police Civil Service Commission culminated its process on the request for reinstatement by Kenneth Staten on June 6, 1994.

The Commission voted to reinstate him as eligible for rehiring.
pc: Chief Gary L. Wade
    Kenneth Staten

**6.** The record on appeal does contain the affidavits of Commissioners Burns and Trainor which attempt to describe factually what occurred during the course of the hearing on June 6, 1994. This Court does not lend any real significance to these affidavits since they were attached to the

We review a circuit court's underlying factual findings under a clearly erroneous standard. *Phillips v. Fox,* 193 W.Va. 657, 458 S.E.2d 327 (1995). In issuing a writ of mandamus, the circuit court agreed with Appellee that he was eligible for reinstatement and specifically found "that there were no formal charges of misconduct or other misfeasance as required by 8–14–12 (1972) of the West Virginia Code (Police Civil Service Act), pending against Kenneth F. Staten when he resigned from the Police Department." In the following discussion we conclude that this finding is based upon a flawed analysis of *W.Va.Code* 8–14–12 (1972), vis-a-vis the content of the Agreement. Accordingly since this factual finding, which served as leverage for two parts of the mandamus trilogy (clear legal right and legal duty), is clearly erroneous, the circuit court could not compel Staten's reinstatement.

The Mayor has refused to follow the recommendation of the Commission and challenges Staten's eligibility to be reinstated. The Mayor contends that Staten is not eligible for reinstatement because he previously resigned from the police force at a time when there were charges of misconduct or other misfeasance pending against him. She points to the Agreement wherein Staten acknowledges committing acts constituting mail fraud as evidence of such improper conduct which denies Staten's eligibility for reinstatement.

Conversely, Appellee asserts that misconduct or other misfeasance contemplates only formal criminal charges—such as a formal arrest, indictment or information—as a bar to reinstatement and since the Agreement eventually resulted in the withdrawal of any criminal charges, he is eligible for reinstatement. We decline to burden *W.Va.Code* 8–14–12 (1972) with this threshold level of misconduct or other misfeasance.

We hold that if an applicant for reinstatement previously resigned from the police force under charges of misconduct or other misfeasance, he or she is *per se* ineligible for reinstatement under *W.Va.Code* 8–14–12 (1972). Further, we hold that the charge of misconduct or other misfeasance which constitutes a *per se* basis for ineligibility for reinstatement under *W.Va.Code* 8–14–12 (1972), need not rise to the level of a formal arrest, indictment or information. There can be a charge of misconduct or other misfeasance by an acknowledgment of a police officer that he or she has committed an act which violates the laws of the United States or any of the various states.

## IV.

## ACKNOWLEDGMENT OF MISCONDUCT OR OTHER MISFEASANCE

Appellee entered into an Agreement for Pretrial Diversion, whereby he acknowledged responsibility for his actions. A federal criminal prosecution can be avoided by entering into a pretrial diversion program and signing an agreement acknowledging misconduct or misfeasance, although an offender need not admit guilt.

Pre-trial diversion is an alternative to prosecution that diverts certain offenders from traditional criminal justice processing into a program of supervision. The offenders must acknowledge responsibility for their actions, but need not admit guilt. *See* UNITED STATES ATTORNEY'S MANUAL, ch. 22, 9–22.400. "Participants who successfully complete the program will not be charged or, if charged, have the charges against them dismissed; unsuccessful participants are returned for prosecution." *Id.,* 9–22.000.

*Taylor v. Gregg,* 36 F.3d 453, 455 (5th Cir. 1994). By entering into an Agreement for Pretrial Diversion, an offender acknowledges responsibility for actions which amount to a federal crime.

A federal pretrial diversion agreement precludes a subsequent claim that the events

---

petition for the writ of mandamus filed in the circuit court and not embraced within the formal memorandum of the Commission in which dissenting Commission member Buchanan could have participated. However, the absence of any

findings or conclusions by the Commission is not critical in the overall resolution of the case *sub judice* since upon this court's de novo review Appellee was not eligible for reinstatement.

leading to the diversion remain in dispute. Although the agreement is not an adjudication of guilt, it is certainly an acknowledgement of misconduct or misfeasance.

Diversion results in a final judgment to the extent that the criminal charges are dismissed on the agreement of the parties. Though not an adjudication of guilt, diversion is a consent decree wherein the parties have agreed on the payment of certain fines, completion of a diversion program, *and the stipulation of those facts constituting the offense for which the defendant was charged and on which the defendant would be tried in the event he fails diversion.... To bar [an offender] from now taking a position contrary to those stipulations which were a necessary and essential element to the consensual dismissal of charges appears consistent with the general doctrine of issue preclusion ...*

*Swanson v. Fields,* 814 F.Supp. 1007, 1014–15 (D.Kan.1993), *aff'd,* 13 F.3d 407 (10th Cir. 1993) (emphasis added).

On January 22, 1993, Staten's resignation from the police force became effective, and on that same date he entered into a Pretrial Diversion Program to avoid prosecution for mail fraud, a federal crime. The Agreement is a clear manifestation of misconduct or other misfeasance in the form of mail fraud. The acknowledgment that the results of the investigation conducted by federal law enforcement officials, by which it appeared that Staten committed mail fraud, was a sufficient charge of misconduct and other misfeasance that existed at the time of his resignation that effectively precludes his eligibility to reapply for reinstatement.

Staten's contention that there were no charges of misconduct or other misfeasance pending when he resigned since there was no formal arrest, indictment or information is disingenuous at best. Staten clearly resigned under charges of misconduct or .other misfeasance, which he acknowledged by signing the Agreement.[7] Accordingly, since there were charges of misconduct or other misfeasance extant on January 22, 1993, the date of Staten's resignation, Staten is not eligible to be reinstated under *W.Va.Code* 8–14–12 (1972).[8]

Staten does not have a clear legal right to be reinstated, nor does the Mayor have a clear legal duty to reinstate him to the police force. Because we conclude that the finding of the Commission is clearly wrong and the subsequent order· issued by the circuit court concluding that Staten has a legal right to be reinstated and the Mayor a duty to reinstate him is erroneous, we reverse.

Reversed and remanded with directions to dissolve the writ previously entered.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

7. *See* Preamble of the Agreement for Pretrial Diversion, which provides:

As a result of an investigation conducted by federal law enforcement officials, it appears that you have committed an offense in violation of federal law, to-wit: a violation of Title 18, United States Code, Section 1341 (mail fraud), [sic] or about October, 1992.

8. During oral argument, Staten alleged that he entered into the Agreement under some type of duress in light of the fact that he did not have an attorney. This is not an appropriate forum to collaterally attack the Agreement, however after a review of this record the conclusion is inescapable that any compulsion to enter into a Pretrial Diversion Program would simply be a function of being caught in a scheme to avoid paternal responsibilities.