567 S.E.2d 654

**LEXINGTON LAND COMPANY, LLC, A West Virginia Limited Liability Company, Petitioner Below, Appellee,**

v.

**Robert P. HOWELL, Deputy Commissioner of Delinquent and Nonentered Lands, Respondent Below, Appellant.**

No. 30119.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2002.

Decided July 1, 2002.

Lisa A. Hopkins, West Virginia State Auditor's Office, Charleston, West Virginia, for appellant.

O. Gay Elmore, Elmore & Elmore, Charleston, West Virginia, for appellee.

PER CURIAM.

Appellant, a Deputy Commissioner of Delinquent and Nonentered Lands, appointed

by the authority of the West Virginia State Auditor, appeals the lower court's grant of mandamus in favor of appellee Lexington Land Company, LLC ("Lexington"). Lexington had purchased several properties at a sale conducted by the Deputy Commissioner, but later learned that the properties were nonexistent or erroneously assessed. Lexington sought a refund of the purchase money paid for these properties, but was unsuccessful until the lower court granted a writ of mandamus commanding the Deputy Commissioner to effect a refund for Lexington. Because we agree with the lower court under the limited facts of this case, we affirm.

## I.

## BACKGROUND

This appeal concerns property purchased by the appellant in what is known as a Deputy Land Commissioner's sale, also known as an Auditor's sale. As we explain below, if a property owner fails to pay his or her county property taxes, the property may be sold at auction by the sheriff of that county; if no one purchases the property at the sheriff's sale, the property is then "certified" to the State Auditor. After the appropriate time period has passed, the Auditor, acting in the capacity of Commissioner of Delinquent and Nonentered Lands, will appoint a Deputy Commissioner, who will also hold art auction to sell the property. All types of real property may be sold at these sales, including whole or fractional interests in land, timber, or minerals. Because of the complexity of the tax process, occasionally the "property" offered for sale may not exist, or may have been assessed erroneously.

Appellee Lexington Land, LLC, is a West Virginia limited liability company with one member, Mr. O. Gay Elmore, Jr.[1] On January 4, 2000, on behalf of Lexington, Mr. Elmore purchased several properties from Deputy Commissioner of Delinquent and Nonentered Lands Robert P. Howell. The rec-

ord indicates that Lexington paid approximately $2,000 for these nine properties. On February 22, 2000, the sales were submitted to the Auditor's office for approval, and on March 6, 2000, the Auditor approved the sales. Appellant Howell issued deeds to the properties on June 13, 2000. Appellee recorded the deeds no later than July 24, 2000.

The parties dispute what happened next. Appellant Howell claims that sometime after Mr. Elmore recorded the deeds to the properties, Mr. Elmore contacted the Assessor's office contesting the assessed value of some or all of the properties. Mr. Elmore acknowledges contacting the Assessor's office, however, Mr. Elmore attributes the meetings to a concern about the existence of the properties, not the value.

Although Lexington purchased all nine properties on the same day, apparently Mr. Elmore did not discover the problems with these properties all at once. Mr. Elmore filed a so-called "Certificate of Attorney–at–Law" for several of the properties, notifying Deputy Commissioner Howell that each property was either "the subject of an erroneous assessment, or is otherwise nonexistent."[2] In response, appellant, along with the State Auditor's office, informed Mr. Elmore that a refund could not be obtained after a deed to a property was issued.

Mr. Elmore then contacted the Kanawha County Sheriff's Office and inquired about obtaining a refund. The Sheriff responded in a letter dated December 4, 2000, that because a deed had already been recorded for each property, "it is the Sheriff's position that West Virginia Code § 11A–3–53 had no further application and there is nothing the Sheriff can do to resolve your problem."

Unable to find satisfaction in any other manner, on January 3, 2001, Mr. Elmore filed a Petition for a Writ of Mandamus against both the Sheriff and the County Clerk of Kanawha County seeking reimbursement for the money spent on the con-

---

1. While for purposes of this opinion we may refer to Mr. Elmore and to Lexington interchangeably, we recognize that Mr. Elmore and the LLC are not one and the same and that the creation of a limited liability company offers its members protection from liability.

2. Mr. Elmore mailed these "certificates" to Deputy Commissioner Howell on several different dates from August 2000 through February 2001.

tested properties. The trial court issued a Rule to Show Cause and scheduled a hearing for January 25, 2001. At the hearing, the Sheriff and County Clerk were dismissed from the action, and Mr. Elmore was granted leave to amend his petition. Thereafter, on February 21, 2001, Mr. Elmore filed his amended petition, naming only Deputy Commissioner Howell as a respondent.

On February 23, 2001, the trial court again issued a Rule to Show Cause and set a hearing for March 13, 2001. On the afternoon of March 12, 2001, the trial court sent out notice that the time of the hearing would be changed from 10:30 a.m. to 8:00 a.m. due to a conflict the judge had because of a jury trial then in progress. Counsel representing appellant at that time claims she never received the notice and only learned of the time change from other counsel. Thereafter, appellant's counsel informed the court she would be unable to attend the hearing at the newly scheduled time and asked that it be reset. However, the court went ahead with the hearing as rescheduled. Following the hearing, both parties submitted Memoranda of Law supporting their positions. Subsequently, on May 3, 2001, the trial court issued an order granting Mr. Elmore a Writ of Mandamus commanding appellant to refund Mr. Elmore's money. Appellant now contests the order issued by the trial court. Because we find that W.Va.Code § 11A–3–53 (1999), at the time in question, did not include a time period for which a request for a refund of the purchase price must be made, we affirm.

## II

### STANDARD OF REVIEW

Because this case concerns the lower court's award of a writ of mandamus, our review of the court's action is plenary. "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo." Syl. pt. 1, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576 (1995). As in any case concerning the award of such a writ, the party seeking the writ must show he or she has a right to such a remedy, that he or she has no other

sufficient remedy, and that the responding party has a duty to act.

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 1, State ex rel. Billy Ray C. v. Skaff, 190 W.Va. 504, 438 S.E.2d 847 (1993) (citations omitted); accord, Rollyson v. Jordan, 205 W.Va. 368, 518 S.E.2d 372 (1999). Finally, we note that: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. pt. 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### DISCUSSION

Before examining the specific statute at issue in this case, a brief overview of the "tax sale" process is in order. The Legislature set forth the general procedures governing the sale of property to recover delinquent taxes in W.Va.Code § 11A–3–1, et seq. This section of the Code has three main parts, the first dealing with a sheriff's duties and authority, the second with those of the Auditor, and the third covering several miscellaneous provisions. See Mingo County Redevelopment Authority v. Green, 207 W.Va. 486, 534 S.E.2d 40 (2000), for a more thorough explanation of this process.

The instant case concerns the Deputy Commissioner's sale, so we make only brief mention of the procedure for the sheriff's sale. Pursuant to W.Va.Code § 11A–3–2 (2000), a sheriff must determine which taxpayers are delinquent in paying property tax and then must publish that list, and mail a "notice of delinquency" to certain parties. Specifically, the sheriff must mail notice to the record owners of the property, any lienholder of record, and any other parties with an interest in the property who have notified the sheriff of their interest by returning a

specific form to the sheriff.[3] After a prescribed period of time, the sheriff then conducts an auction. Delinquent taxpayers may redeem a property at any time before the auction, and for a certain period of time after a sale. If there is not a sale of the property at the sheriff's auction, then the fate of the property falls to the Auditor.

The Code explains the Auditor's duties and authority in this process:

> The state auditor shall ex officio be state commissioner of delinquent and nonentered lands. The term "auditor" whenever used in this chapter in connection with delinquent, nonentered, escheated or waste and unappropriated lands, shall be construed to refer to the auditor in his capacity as state commissioner of delinquent and nonentered lands.

> The auditor is empowered, and it shall be his duty, through the land department in his office, to administer and carry into execution the laws with reference to such lands. The auditor on behalf of the state shall have power to hold and manage such lands, and to exercise all other powers incident to the powers and duties conferred upon him by this article.

W.Va.Code § 11A–3–33 (1994). As we explained in *Green:* "The Code requires the Auditor to create a list of all such properties and to submit a copy of this list to the county clerk of each county. In so doing, the Auditor 'certifies' this list to deputy commissioners in preparation for sale. W.Va.Code § 11A–3–44 (1994). The Code requires the deputy land commissioner to sell the properties on the list at auction."[4] *Mingo County Redevelopment Authority v. Green,* 207 W.Va. 486, 494, 534 S.E.2d 40, 48 (2000). After the sale, the Auditor has the opportunity to reject it if he determines that the sale is not "in the best interest of the state;" otherwise, he will approve the sale. W.Va.Code § 11A–3–51 (1995). After the sale is approved, a buyer has an obligation to provide notice to those with an interest in the property.[5] As we noted in *Green:*

> The point at which a party has the obligation to mail or deliver personal notice occurs after the deputy land commission-

---

3. That statute provides, in part:

(a) On or before the tenth day of September of each year, the sheriff shall prepare a second list of delinquent lands, which shall include all real estate in his county remaining delinquent as of the first day of September, together with a notice of sale, in form or effect as follows: [description of required form omitted]. . . .

The sheriff shall publish the list and notice prior to the sale date fixed in the notice as a Class III–0 legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publication area for such publication shall be the county.

(b) In addition to such publication, no less than thirty days prior to the sale the sheriff shall send a notice of such delinquency and the date of sale by certified mail: (1) To the last known address of each person listed in the land books whose taxes are delinquent; (2) to each person having a lien on real property upon which the taxes are due as disclosed by a statement filed with the sheriff pursuant to the provisions of section three of this article; (3) to each other person with an interest in the property or with a fiduciary relationship to a person with an interest in the property who has in writing delivered to the sheriff on a form prescribed by the tax commissioner a request for such notice of delinquency; and (4) in the case of property which includes a mineral interest but does not include an interest in the surface other than an interest for the purpose of developing the minerals, to each person who has in writing delivered to the sheriff, on a form prescribed by the tax commissioner, a request for such notice which identifies the person as an owner of an interest in the surface of real property that is included in the boundaries of such property: . . . .
W.Va.Code § 11A–3–2 (2000).

4. Each tract or lot certified to the deputy commissioner pursuant to the preceding section shall be sold by the deputy commissioner at public auction at the courthouse of the county to the highest bidder between the hours of nine in the morning and four in the afternoon on any business working day within one hundred twenty days after the auditor has certified the lands to the deputy commissioner as required by the preceding section.

W.Va.Code § 11A–3–45(a) (2000).

5. (a) Within forty-five days following the approval of the sale by the auditor pursuant to section fifty-one of this article, the purchaser, his heirs or assigns, in order to secure a deed for the real estate purchased, shall: (1) Prepare a list of those to be served with notice to redeem and request the deputy commissioner to prepare and serve the notice as provided in sections fifty-four and fifty-five of this article; and (2) deposit, or offer to deposit, with the deputy commissioner a sum sufficient to cover the costs of preparing and serving the notice.

W.Va.Code § 11A–3–52(a) (1995).

er's sale. Even after a sale, the original owner still has an opportunity to redeem the property by paying the taxes. Once someone has purchased a property at that sale, the new purchaser has an obligation to identify those parties entitled to redeem the property before that new purchaser can receive a deed to the property.

*Mingo County Redevelopment Authority v. Green,* 207 W.Va. 486, 494, 534 S.E.2d 40, 48 (2000). After the purchaser prepares the list required by statute, the deputy land commissioner mails notice to those on the list. If no one redeems the property before the deadline given in the notice, the Deputy Commissioner will convey a deed to the new purchaser. *See,* W.Va.Code § 11A–3–59 (1995). The parties do not challenge the sale of the properties in question based on a failure to follow any of the procedures described above; rather, appellee argues he was due a refund because of W.Va.Code § 11A–3–53 (1994).

The cynosure of this case is the lower court's interpretation of the statute that governs when a party may receive a refund when it is discovered that property purchased at a Deputy Commissioner's sale is nonexistent or erroneously assessed. At the time of the events in question, that statute read as follows:

> If, after payment of the amount bid at a deputy commissioner's sale, the purchaser discovers that the property purchased at such sale is the subject of an erroneous assessment or is otherwise nonexistent, such purchaser shall submit the certificate of an attorney-at-law that the property is the subject of an erroneous assessment or is otherwise nonexistent. Upon receipt thereof, the deputy commissioner shall cause the moneys so paid to be refunded. Upon refund, the deputy commissioner shall inform the assessor of the erroneous assessment for the purpose of having the assessor correct said error.

W.Va.Code § 11A–3–53 (1994). Essentially, appellee Lexington argues that this Code section contains no time limit for the submission of the "certificate," and that once a certificate is submitted, the Deputy Commissioner has no choice but to "cause the moneys so paid to be refunded." Appellant argues that the lower court was wrong to grant the writ of mandamus because the vagueness of the statute leaves the appellee with no clear legal duty, and the appellee with no clear legal right.[6] As we have often stated:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 1, *State ex rel. Billy Ray C. v. Skaff,* 190 W.Va. 504, 438 S.E.2d 847 (1993) (citations omitted).

Appellant argues that the Legislature did not define the terms "erroneous assessment," "non-existent," or "certificate of attorney-at-law." Nor did the Legislature expressly grant the Deputy Commissioner the authority to command the Sheriff to refund the purchase price of a flawed sale. Because the Legislature was silent on these issues, argues appellant, the court should have accepted the views of affected governmental agencies as to what W.Va.Code § 11A–3–53 (1994) really means.

Appellant also argues that, when one views the tax-sale process as a whole, the Legislature's decision to use the phrase: "If, after payment of the amount bid at a deputy commissioner's sale, the purchaser discovers" suggests that the Legislature was tacitly specifying a time period for asking for a refund. Appellants suggests that the Legislature was really saying, "If, after payment of the amount bid *but before the deputy commissioner issues a deed* ... such purchaser shall submit a certificate. ..."

6. We note that appellant's counsel also argues a denial of due process because counsel was not properly notified of a time change for the hearing of March 13, 2001. We are concerned that the court did not provide counsel with notice, especially when it appears that counsel had such a valid reason for being unable to attend. However, in light of the fact that the judge had the benefit of full briefs from each party and that the decision reached by the judge was very limited in its scope, we do not believe that the improper notice for the hearing rises to the level of an unconstitutional deprivation of due process.

■ We have repeatedly held that when the words of a statute are clear, we are to apply the meaning provided by the Legislature and not substitute our own, or that suggested to us by a party: "If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery...." Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996). *Accord*, syl. pt. 1, *Nicholas Loan & Mortgage, Inc. v. W.Va. Coal Co-Op, Inc.*, 209 W.Va. 296, 547 S.E.2d 234 (2001); *State ex rel. Charles Town General Hosp. v. Sanders*, 210 W.Va. 118, 556 S.E.2d 85 (2001).

Before taking out our judicial "needle," we again note the language of the statute. in effect at the time Lexington bought the properties. The statute says simply, if

the purchaser discovers that the property purchased at such sale is the subject of an erroneous assessment or is otherwise nonexistent, such purchaser shall submit the certificate of an attorney-at-law that the property is the subject of an erroneous assessment or is otherwise nonexistent. *Upon receipt thereof, the deputy commissioner shall cause the moneys so paid to be refunded.*

W.Va.Code § 11A–3–53 (1994) (emphasis added).

We agree with appellee that the law presumes that the attorney submitting the certificate will not do so frivolously or fraudulently, because to do so would expose the attorney to a host of professional sanctions and possible criminal prosecution. But beyond that threshold presumption that an affected party would not act fraudulently, we believe the lower court was correct to take the Legislature at its word, however brief or curt.

We find some guidance in the fact that in 2001, the Legislature subsequently changed the statute at issue. The statute now reads:

If, within forty-five days following the approval of the sale by the auditor, the purchaser discovers that the property purchased at the sale is nonexistent, the purchaser shall submit the abstract or certificate of an attorney-at-law that the property is nonexistent. Upon receipt of the abstract or certificate, the deputy commissioner shall cause the moneys so paid to be refunded. Upon refund of the amount bid at a deputy commissioner's sale, the deputy commissioner shall inform the assessor that the property does not exist for the purpose of having the assessor correct the error. For failure to meet this requirement, the purchaser shall lose all benefits of his purchase.

W.Va.Code § 11A–3–53 (2001). The presence of this time limit in the new version throws in to sharp relief the *absence* of any time limit in the old version. Though we make no ruling in this regard, we suspect that were appellee facing the new version of the statute, appellant would prevail. However, that is not the case.

In short, appellee faced no statutorily imposed time limit for the filing of the "certificate" that notified the Deputy Commissioner of a problem with the sale. We do believe that the law presumes a reasonable time period for one similarly situated to appellee to take such action, but we do not feel that the period of months that elapsed in the instant case amounted to unreasonable delay. As appellee points out, in an earlier case we ruled that, while laches will at some point bar a suit over a tax sale, a delay of eight months was not long enough to bar a suit.

Implicit in this case is the issue of whether suits to set aside delinquent land tax deeds can be time barred. We note that there do not appear to be many cases decided subsequent to *Mennonite* that discuss this issue. The Third Circuit Court of Appeals in *Benoit v. Panthaky*, 780 F.2d 336 (3d Cir.1985), assumed without deciding that laches might apply, but held under the facts of the case that it was not applicable. A similar conclusion was reached by the Indiana Court of Appeals in *Fields v. Evans*, 484 N.E.2d 36 (Ind.App.1985). We have utilized the doctrine of laches or equitable estoppel to bar relief in prior land tax cases. See, *e.g.*, *Thaxton v. Beard*, 157 W.Va. 381, 201 S.E.2d 298 (1973) (estoppel applied in case of errone-

ous assessment); *Work v. Rogerson,* 152 W.Va. 169, 160 S.E.2d 159 (1968) (laches in delinquent tax deed).

This suit was filed only eight months after delivery of the deputy commissioner's deed. There was no intervening disposition of the property by Mr. Jackson nor any capital improvements thereon. Furthermore, the record does not reveal any inequitable conduct by the plaintiff that would operate as a bar. We, therefore, conclude that the suit was timely.

*Anderson v. Jackson,* 180 W.Va. 194, 196, 375 S.E.2d 827, 828–29 (1988) (per curiam). While our concern in *Anderson* was for the welfare of the original owner, not the tax-sale purchaser, we, nonetheless, feel that the appellee's actions in the instant case were not unreasonably delayed.

Having said that, we do agree with the Deputy Commissioner that finality and predictability are of the utmost importance to the tax-sale process:

> We agree with the Auditor that confidence in one's title to land is of paramount importance. As we have remarked previously, "certainty above all else is the preeminent compelling public policy to be served." *Hock v. City of Morgantown,* 162 W.Va. 853, 856, 253 S.E.2d 386, 388 (1979). We are also mindful that the government must make a timely collection of property taxes in order to function properly.

*Mingo County Redevelopment Authority v. Green,* 207 W.Va. 486, 491, 534 S.E.2d 40, 45 (2000).[7] But we feel confident that the concerns of the Deputy Commissioner will be addressed adequately in the future by the application of the new statute.

In summation, appellant complied with the dictates of the statute at the time by providing the specified "certificates." Nothing in the record suggests that these certificates were incorrect or in any way fraudulent or unreliable. We believe that appellee had a clear legal right to a refund, and appellant a

clear legal duty to make one, under the prior version of the statute. Accordingly, because we find that W.Va.Code § 11A–3–53 (1994), at the time in question, did not include a time period for which a request for a refund of purchase price had to be made, we affirm the decision of the lower court, and further order that the Sheriff of Kanawha County honor any request made by the Deputy Commissioner for the refund of appellee's purchase money.

IV.

CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

7. The Legislature has also expressed the importance of keeping property on the tax rolls:

> In view of the paramount necessity of providing regular tax income for the state, county and municipal governments, particularly for school purposes; and in view of the further

fact that delinquent land not only constitutes a public liability, but also represents a failure on the part of delinquent private owners to bear a fair share of the costs of government; ....

W.Va.Code § 11A–3–1 (1994).