**FILED**
**September 20, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Robert D. Heavner,**
**Defendant Below, Petitioner**

**vs.) No. 21-0558** (Berkeley County 20-C-40)

**Larry Hess,**
**Plaintiff Below, Respondent**

**And**

**Ramona J. Beglen,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Self-represented petitioner Robert D. Heavner appeals three orders of the Circuit Court of Berkeley County. In the first order, entered on May 4, 2021, the circuit court granted Respondent Ramona J. Beglen's motion for summary judgment and allowed Respondent Larry Hess, Assessor of Berkeley County ("Assessor Hess"), to remove parcel 72 from Map 16, Opequon District, of the Berkeley County tax maps, land books, and other public records in which it appears and to provide a certified copy of the court's order for recording in the Office of the Clerk of the Berkeley County Council. In the second order, entered on May 28, 2021, the circuit court denied petitioner's motion to alter or amend the May 4, 2021, order pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. In the third order, entered on June 14, 2021, the circuit court reaffirmed its denial of his Rule 59(e) motion following petitioner's objection to the entry of the May 28, 2021, order. Assessor Hess, by counsel Alex A. Tsiatsos, and Respondent Beglen, by counsel Richard G. Gay, (collectively "respondents") filed a joint response in support of the circuit court's orders. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the

1

Rules of Appellate Procedure.

We provide a simplified version of the facts and procedural history of this case: Parcels 71 and 72 in the Opequon District of Berkeley County, West Virginia, have the same street address, 5028 Shepherdstown Road. Parcel 71 belongs to Respondent Beglen who bought it (with her late husband) in 1967. In 2012, petitioner bought parcel 72 at a tax sale conducted by the Deputy Commissioner of Delinquent and Non-entered Lands.[1] Petitioner was the last person in a series of buyers who purchased parcel 72 at tax sales from 1974 to 2012.

In 2020, Assessor Hess filed a declaratory judgment action in the Circuit Court of Berkeley County to correct the Berkeley County tax records based upon his determination that parcel 72 constituted a "phantom parcel," having no actual, separate existence from Respondent Beglen's parcel 71. Initially, Assessor Hess named as defendants Respondent Beglen and a Lusmilo Sanches who bought parcel 72 from petitioner in May of 2012. However, after the filing of the declaratory judgment action, petitioner produced a previously unrecorded deed, dated November 23, 2012, in which Ms. Sanches reconveyed parcel 72 to him.[2] Accordingly, on March 21, 2020, Assessor Hess filed an amended complaint which named petitioner as an additional defendant.[3]

On December 14, 2020, Respondent Beglen filed a motion for summary judgment, arguing that (1) all tax sales of parcel 72, including petitioner's purchase of the parcel in 2012, were void ab initio because parcel 72 had no actual, separate existence from parcel 71 for which she had paid all prior taxes; and (2) petitioner's purchase of parcel 72 at the 2012 tax sale was also void due to a jurisdictional defect in that petitioner failed to serve Respondent Beglen with a notice to redeem

---

[1] As this Court noted in *Lexington Land Company, LLC v. Howell*, 211 W. Va. 644, 567 S.E.2d 654 (2002),

> if a property owner fails to pay his or her county property taxes, the property may be sold at auction by the sheriff of that county; if no one purchases the property at the sheriff's sale, the property is then "certified" to the State Auditor. After the appropriate time period has passed, the Auditor, acting in the capacity of Commissioner of Delinquent and Non[-]entered Lands, will appoint a Deputy Commissioner, who will also hold [an] auction to sell the property.

*Id.* at 646, 567 S.E.2d at 656.

[2] There was also a delay in the recordation of a deed in Respondent Beglen's chain of title for parcel 71, which deed was executed in 1959 but not recorded until 1963. Respondents argue that, while petitioner claims that this delay in recordation is somehow important, he fails to intelligibly argue its relevance. We agree with respondents. Therefore, as we explain *infra*, we decline to review this and all other inadequately raised issues pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

[3] Ms. Sanches never appeared before the circuit court, though she remained a named defendant below.

2

parcel 72 when Respondent Beglen was the parcel's true owner as the owner of parcel 71. Respondent Beglen submitted affidavits from the attorneys that she and Assessor Hess had retained to conduct title searches regarding parcels 71 and 72. In those affidavits, the attorneys opined that parcel 72 had no actual, separate existence from parcel 71 and that the separate tax assessment for parcel 72 had been erroneous. Respondent Beglen also submitted an affidavit, in which she affirmed that she paid all real estate taxes on the property she owned and never received any notice of a sale of her property due to nonpayment of taxes.

In his response to the motion for summary judgment, petitioner admitted that he failed to serve Respondent Beglen with a notice to redeem parcel 72. However, petitioner argued that he was not legally required to serve Respondent Beglen with a notice to redeem because she was not the owner of parcel 72, which had an existence separate and apart from Respondent Beglen's parcel 71. Petitioner attached three self-authored and signed counter-affidavits in support of his response.

The circuit court, by an order entered on May 4, 2021, granted Respondent Beglen's motion for summary judgment. In that order, the circuit court also granted Assessor Hess the relief he sought in his amended complaint by directing Assessor Hess to remove parcel 72 from Map 16, Opequon District, of the Berkeley County tax maps, land books, and other public records in which it appears and to provide a certified copy of the court's order for recording in the Office of the Clerk of the Berkeley County Council.

On May 17, 2021, petitioner filed a motion to alter or amend the circuit court's May 4, 2021, summary judgment order pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. On that same day, the circuit court entered a scheduling order setting forth a briefing schedule with regard to the motion. Pursuant to the briefing schedule, Respondent Beglen and Assessor Hess each filed a response in opposition to petitioner's Rule 59(e) motion. Thereafter, petitioner filed a memorandum of law in support of his motion on May 28, 2021; the circuit court treated petitioner's May 28, 2021, memorandum of law as a reply to respondents' responses. Also on May 28, 2021, the circuit court entered an order denying the motion to alter or amend its summary judgment order.

However, on June 4, 2021, petitioner filed a reply to each of the responses filed by Respondent Beglen and Assessor Hess. On June 7, 2021, petitioner also submitted a proposed order with regard to his Rule 59(e) motion. Accordingly, petitioner objected to the entry of the circuit court's May 28, 2021, order as premature. The circuit court, by order entered on June 14, 2021, noted its receipt of petitioner's June 4, 2021, replies and his June 7, 2021, proposed order. The circuit court once again rejected petitioner's arguments and reaffirmed its denial of the Rule 59(e) motion to alter or amend the summary judgment order.

Petitioner now appeals the circuit court's May 4, 2021, May 28, 2021, and June 14, 2021, orders. While the May 28 and June 14 orders disposed of petitioner's Rule 59(e) motion, we have held that the standard of review for the denial of a motion to alter or amend judgment, filed pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513

3

S.E.2d 657 (1998).

Rule 56(c) of the West Virginia Rules of Civil Procedure provides that summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." In Syllabus Point 1 of *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994), we held that "[a] circuit court's entry of summary judgment is reviewed *de novo*."

On appeal, petitioner argues that the circuit court erred in awarding summary judgment to Respondent Beglen and Assessor Hess and in finding that petitioner's failure to serve Respondent Beglen with a notice to redeem parcel 72 constituted the dispositive issue in the case. Respondents counter that the circuit court awarded them summary judgment on an additional ground: that all tax sales of parcel 72, including petitioner's purchase of the parcel in 2012, were void ab initio because parcel 72 had no actual, separate existence from Respondent Beglen's parcel 71 for which she had paid all prior taxes. Respondents further argue that, as best as they can determine, petitioner does not substantively dispute that he failed to serve a notice to redeem on Respondent Beglen or that all tax sales of parcel 72 were void ab initio.

Like respondents, we have difficulty understanding petitioner's arguments. However, we find that petitioner clearly concedes that he failed to serve Respondent Beglen with a notice to redeem parcel 72. To the extent that petitioner disputes that parcel 72 had no actual existence separate from Respondent Beglen's parcel 71, we decline to review any such arguments pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides, in pertinent part, that "[petitioner]'s brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error" and that this Court "may disregard errors that are not adequately supported by specific references to the record on appeal." As we have previously stated, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res., Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); *see also State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal).

While petitioner concedes that he failed to serve a notice to redeem on Respondent Beglen, he argues that he was not legally required to provide such notice because Respondent Beglen did not appear in the chain of title for parcel 72. We find that Respondent Beglen did not appear in the chain of title for parcel 72 (consisting only of tax deeds from 1974 through 2012) because parcel 72 had no actual existence separate from Respondent Beglen's parcel 71, as was comprehensively demonstrated by the circuit court's findings.

Having reviewed the circuit court's May 4, 2021, "Final Order Granting Beglen's Motion

4

For Summary Judgment," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions, which we find address petitioner's assignments of error. The Clerk is directed to attach a copy of the circuit court's May 4, 2021, order to this memorandum decision. Accordingly, we conclude that the circuit court did not err in granting Respondent Beglen's motion for summary judgment and denying petitioner's motion to alter or amend the May 4, 2021, summary judgment order.[4]

For the foregoing reasons, we affirm the circuit court's May 4, 2021, order granting Respondent Beglen's motion for summary judgment and allowing Assessor Hess to remove parcel 72 from Map 16, Opequon District, of the Berkeley County tax maps, land books, and other public records in which it appears and to provide a certified copy of the court's order for recording in the Office of the Clerk of the Berkeley County Council. We further affirm the circuit court's May 28, 2021, and June 14, 2021, orders, which denied petitioner's motion to alter or amend the May 4, 2021, order.

Affirmed.

**ISSUED:** September 20, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

[4]Petitioner argues that the circuit court erred in entering its May 28, 2021, order denying his motion to alter or amend the May 4, 2021, summary judgment order prior to the filing of his June 4, 2021, replies to respondents' responses and the filing of his June 7, 2021, proposed order. We find that any alleged error was (1) harmless given the correctness of the underlying summary judgment order and (2) rectified by the circuit court's June 14, 2021, order, in which it once again rejected petitioner's arguments and reaffirmed the denial of petitioner's Rule 59(e) motion.

5

/s/ R. Steven Redding
Circuit Court Judge
Ref. Code: 21ATYGOL

E-FILED | 5/4/2021 4:16 PM
CC-02-2020-C-40
Berkeley County Circuit Clerk
Virginia Sine

## IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

**LARRY HESS, ASSESSOR OF**
**BERKELEY COUNTY, WEST VIRGINIA,**

*Petitioner,*

*vs.*                                                                 **Civil Action No. 20-C-40**

**RAMONA BEGLEN and**
**LUSMILO SANCHES, and**

**ROBERT HEAVNER,**

*Respondents.*

### FINAL ORDER GRANTING BEGLEN'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Respondent Beglen's Motion for Summary Judgment. Petitioner, Berkeley County Assessor, by counsel, has joined in Respondent Beglen's Motion. The matter has been fully briefed and is ripe for consideration by the Court. Also pending are Respondent Heavner's Motion to Strike and multiple Motions for Oral Argument [on the Motion for Summary Judgment] filed by Respondent Heavner, the most recent of which was filed on April 26, 2021.

The issues have been briefed as follows: Beglen's Motion for Summary Judgment, Respondent Heavner's Response/Rebuttal in Opposition to Beglen's Motion for Summary Judgment, and Petitioner Beglen's Reply to the Response to Motion for Summary Judgment that was filed by Respondent Robert Heavner. Mr. Heavner's Motion for Oral Argument was opposed on the ground that it was unnecessary. The Court is persuaded that the matter has been extensively briefed and illuminated with multiple exhibits, and while this dispositive Motion for Summary Judgment was and is vigorously opposed, the underlying facts are not in actuality that complex.

Page 1 of 33

For this reason the Court finds that oral argument would not aid the Court in ruling on the Motion for Summary Judgment. Therefore, Mr. Heavner's Motions for Oral Argument are **DENIED**.

Upon consideration of the briefs and exhibits filed in support of Beglen's Motion for Summary Judgment, the Assessor's joinder in Beglen's Motion for Summary Judgment, Heavner's Response/Rebuttal, the applicable legal principles, and the Court's firm belief that this matter is ripe for decision at this time, the Court is of the opinion that there are no material disputed facts that raise a trialworthy issue and hereby GRANTS Respondent Beglen's Motion for Summary Judgment. The Court also DENIES Respondent Heavner's Motion to Stike the Affidavit of William King, as discussed at the end of this Order.

In support of its ruling, the Court makes the following findings of fact and conclusions of law:

## I. INTRODUCTION

This case concerns a request by the Assessor of Berkeley County, West Virginia, Larry Hess, to correct an error by the Assessor's Office that had the appearance of creating a separate parcel known as Parcel 72 on Tax Map 16, Opequon District, a non-existent "phantom parcel" in Berkeley County, West Virginia (hereafter simply "Parcel 72"). This error has persisted since 1965 in the Assessor's records and pertains to part of the property owned by Respondent Beglen described in the Assessor's records as Parcel 71 (Tax Map 16, Opequon District, hereafter "Parcel 71"), with the street address of 5028 Shepherdstown Rd., Martinsburg WV 25404. Both Parcel 71 and Parcel 72 have the same street address.

However, Parcel 72 does not actually exist on the ground. It does not have a real, separate existence from Beglen's Parcel 71. Parcel 72 in fact lies entirely within the boundaries of Lot 71. Additionally,there have been no conveyances out from Parcel 71, which was and is described as

.59 acres, to any person since being acquired by the Beglens in 1967.

The Assessor's Office apparently believed that there existed a separate parcel with a 70-foot frontage along Route 45 as a result of the conveyance from the Ritenours to the Burkes in 1963. This error persisted and this "phantom parcel," which became known as Parcel 72, was assessed separately (and erroneously) by the Assessor's Office. The true owner of the actual, physical land in question was, and remains, Ramona Beglen. Her Parcel 71, which has been assessed and the taxes paid thereon annually from the time that Ms. Beglen acquired it, includes entirely the land area which is listed in the Assessor's Office records as Parcel 72.

In this civil action the Assessor requests this Court to permit the Assessor to make a correction to its land records, to wit: remove non-existent Parcel 72 as a separately existing Parcel in the land maps and records of the Assessor's Office. Continued assessment of non-existent Parcel 72 was a mistake; it should never have been separately assessed following the merger created by the conveyance from the Burkes back to the Ritenours in 1965.

Respondent Robert D. Heavner (herein "Heavner") and his wife Elaine purchased the "phantom lot" known as Lot 72 from the Deputy Commissioner of Delinquent and Nonentered Lands on April 11, 2012 for a recited consideration of $1.00. Mr. Heavner has mounted a vigorous opposition to the correction sought by the Assessor in this civil action. Mr. Heavner claims that he is the rightful owner of Parcel 72, which, he also claims, exists on the ground. Additionally, however, Mr. Heavner never gave notice to Ms. Beglen of the tax sale and his purchase of Parcel 72, which would have been legally required as a prerequisite to gaining legal title to real property purchased at a tax sale, in any event.

## II. STANDARD FOR SUMMARY JUDGMENT

The Court's sole role for the purposes of this motion is to determine whether material disputed facts exist in this matter. If no such material facts exist, the Court's duty is to grant the Summary Judgment Motion and resolve the matter without allowing the case to proceed to trial.

The legal standard for Summary Judgment under Rule 56 of the West Virginia Rules of Civil Procedure was clarified in *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 194 W.Va. 52 (1995). In that case, our Supreme Court stated:

> Briefly stated, our holding is: "Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State. It is 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,'" if there essentially "is no real dispute as to salient facts" or if it only involves a question of law. *Painter v. Peavy*, 192 W.Va. at 189 n.5, 451 S.E.2d at 758 n.5, quoting *Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). . . . . .

> Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper only where the moving party shows by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 1 of *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992), we reiterated the standard for granting summary judgment:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)."

*Williams v. Precision Coil, Inc.*, 459 S.E.2d at 336, 194 W.Va. at 59.

As a general rule, summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove. Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

The West Virginia Supreme Court of Appeals has also held that the burden of proof is upon the party opposing summary judgment to produce evidence sufficient for a reasonable jury to find in its favor. The standard is as follows:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

> To be specific, the party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, 91 L.Ed.2d at 214. The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue. A "trialworthy" issue requires not only a "genuine" issue but also an issue that involves a "material" fact. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510, 91 L.Ed.2d at 211.

*Id.* at 333.

Applying this standard, the Court finds that the dispositive issue, i.e. failure to give "notice" to Ms. Beglen in 2012 as required by West Virginia law and jurisprudence, is conceded by Mr. Heavner.

Based on the standards set forth in *Williams* and related cases, the Court concludes that Respondent Heavner has failed to meet his burden of proof by pointing to specific facts demonstrating that there is indeed a trialworthy issue, which requires "not only a genuine issue but also an issue that involves a material fact." *Williams*, supra, at Syl. Pt. 3.

## III.    FINDINGS OF FACT

The Court has found that all the material facts here are essentially of public record and accordingly cannot be disputed. Therefore, the following facts are undisputed:

1. This matter involves the real property situated in Berkeley County and more fully described as follows:

> 0.26 acres, part of lots 1 & 2, Van Metre Lots, in Opequon District, Berkeley County, West Virginia, Tax Map 16, Parcel 72 and described on that Plat of Survey for Part of Lot 2 Thomas H. Van Metre Lots, drawn by Allegheny Surveys, Inc. dated April 14, 2017, and recorded in the Office of the Clerk of the County [Council] of Berkeley County, West Virginia, in Deed Book 1175, at page 483 (herein "Parcel 72").

This parcel is listed in the Assessor's records as Parcel 72 and it appears to overlap part of the property owned by Beglen described in the Assessor's records as Parcel 71, with the street address of 5028 Shepherdstown Rd., Martinsburg WV 25404 (the same street address for both).

2. However, Parcel 72 does not actually exist on the ground. It does not have a real, separate existence from Beglen's Parcel 71.

3. This area of the Opequon District is described in the 1957 survey which shows three lots: Lot 1, Lot 2 and Lot 3 ("the Van Metre Lots"). The Beglen property, Parcel 71 in the Assessor's records, is part of Van Metre Lot 2.

4. Van Metre Lot 2, as staked out and described in the 1957 survey, ran from stake number 4 of that survey N 61° 01' W for 200 feet along Route 45 (now Shepherdstown Road).

5. In 1959, Thomas Van Metre deeded all of Lot 2, plus another 10 feet of Lot 1, which adjoins Lot 2 to the west, to Claude and Glorietta Ritenour.

6. In 1963, the Ritenours deeded part of Lot 2 to Thomas and Nancy Burke. This conveyance transferred only the eastern most 70 feet of Lot 2's same frontage line as measured from stake 4 along Route 45. This is the land that came to be described as Lot 72.

7.     On August 30, 1965, the Burkes re-conveyed the same property back to the Ritenours. This reconveyance effectively merged the property back into the adjoining property then owned by the Ritenours. Therefore, there was no longer any separate parcel as was conveyed in 1963 by the Ritenours to the Burkes. The land described subsequently and in error by the Assessor's Office as Lot 72 was, by this merger, extinguished.

8.     On September 4, 1965, the Ritenours conveyed a newly defined parcel to Eugene and Virginia Sirk. This parcel conveyed 140 feet starting from stake 4 running along the same line fronting Route 45. This is the parcel that today is now known as Parcel 71.

9.     In 1967, the Sirks conveyed the same property (Parcel 71) to William and Ramona Beglen. Mr. Beglen passed away, and his interest in the property transferred to Ramona Beglen, who still owns it today. There have been no conveyances from Parcel 71, which was described as .59 acres, to any person since Beglen's purchase in 1967.

10.     However, the Assessor's Office at that time apparently did not recognize the merger created by the conveyance back from the Burkes to the Ritenours that extinguished the land described as Lot 72. That is, the Assessor's Office apparently still believed that there existed a separate parcel with a 70-foot frontage along Route 45 as a result of the first conveyance from the Ritenours to the Burkes.

11.     But this was an error. As stated above, that separate parcel with the 70-foot frontage running N 61° 01′ W from stake 4 along Route 45 no longer existed. The land was merged back into a larger parcel and became part of the property (with 140 feet of frontage) conveyed to the Beglens (i.e., Lot 71).

12.     Unfortunately, this error persisted and this non-existent parcel, which became known as Parcel 72, was assessed separately by the Assessor's office. But because the parcel did

not actually exist, there was no reason for Ritenours, the Beglens, or anyone else to pay taxes on it. Compounding the error, after the Assessor's records showed that no taxes had been paid in a number of years, non-existent Parcel 72 was sold at a tax sale in 1974.

13.     Parcel 72 was sold and conveyed to Eugene Benton by deed dated December 12, 1974 for nonpayment of the 1971, 1972 and 1973 real estate taxes by Claude Ritenour. Parcel 72 was a part of the Beglen parcel, and Beglen had paid the taxes on her whole parcel, thus making this deed invalid. Beglen received no notice of this tax sale, or any other transfer of Parcel 72, for nonpayment of taxes.

14.     Parcel 72 was then sold and conveyed to Raquel Crider by deed dated April 2, 1982 for nonpayment of the real estate taxes by Eugene Benton. Parcel 72 was a part of the Beglen parcel, and Beglen had paid the taxes on her whole parcel, thus making this deed invalid. Beglen received no notice of this tax sale, or any other transfer of Parcel 72, for nonpayment of taxes.

15.     Parcel 72 was sold and conveyed to Kenneth Albert by deed dated April 24, 1996 for nonpayment of the real estate taxes by Raquel Crider. Parcel 72 was a part of the Beglen parcel, and Beglen had paid the taxes on her whole parcel, thus making this deed invalid. Beglen received no notice of this tax sale, or any other transfer of Parcel 72, for nonpayment of taxes.

16.     The purchasers at the most recent tax sale were Robert D. Heavner and his wife Elaine L. Heavner, who received a deed to non-existent Parcel 72 dated February 29, 2012 from G. Russell Rollyson, Jr., Deputy Commissioner of Delinquent and Nonentered Lands of Berkeley County, West Virginia. The consideration listed for the sale was $1.00.

17.     On November 7, 2011 Robert Heavner of 4062 Winchester Avenue, Martinsburg, West Virginia was advised that his purchase of Certificate Number 021342, described as .26 acres Pt Lots 1-2 TN Van Metre Lots, Opequon district, municipality, at the Deputy Land

Commissioner's Sale of Delinquent and Nonentered Property, had been approved by the Auditor of the State of West Virginia.

18. This letter further stated:

"In order to secure a deed for this real estate you must:

- Please list those to be served with notice to redeem to the Deputy Commissioner on the enclosed form ... (All forms not typed will be returned) You are not required to use an attorney, but I strongly recommend that you do so. Most attorneys are aware of these requirements and can properly assist you with this list."

19. Mr. Heavner decided not to use an attorney to examine the title to the property, but apparently examined the title himself and determined that the Notice should only be mailed by Certified Mail to Kenneth R. Albert at 556 Scrabble Road, Martinsburg, West Virginia, as one entitled to be served with the Notice of the right to redeem the property by the Office of the State Auditor.

20. The State Auditor's Office Notice to Redeem Form sent by Mr. Heavner to the State Auditor's Office list the person to be served for Certificate Number 021342, Berkeley County, .26 Ac Pt Lots 1-2 TN Van Metre Lots, as Kenneth R. Albert, 556 Scrabble Road, Martinsburg, West Virginia 25404, to be served by Certified Mail only. No other persons were listed in the State Auditor's request for those to serve the Notice to Redeem Form.

21. The Receipt from Deputy Commissioner for Delinquent and Nonentered Lands shows the total amount Heavner paid for the property sold at land sale on 11/7/2011 was $590.16.

22. The West Virginia State Auditor's Office Delinquent and Non-Entered Land Bid Form shows that the bid amount was $1.00 offered by Mr. Heavner for this property.

23. On November 7, 2011 the State Auditor's Office, County Collections Division, notified Honorable Kenneth Lemaster, Sheriff and Treasurer of Berkeley County, of the sale of

this property for $5.00, which allowed the Deputy Commissioner to sell the land which remains unsold following the annual auction of delinquent and non-entered lands on properties purchased by individuals who failed to meet the requirements for securing a deed.

24.     Robert Heavner filed a Request for Deeds with the Office of the State Auditor, County Collections Division, requesting the names Robert D. Heavner/Elaine L. Heavner on the deed, and paid the sum of $268.20.

25.     The State Tax Commissioner of West Virginia Sales Listing Form for Certification Number 021342, .26 Acres Pt Lots 1-2 TN Van Metre Lots, shows the Grantor as G. Russell Rollyson Jr., Deputy Commissioner of Delinquent & Nonentered Lands and the Grantee as Robert D. Heavner/Elaine L. Heavner, with the consideration as $1.00, that this was a liquidation, foreclosure or other "Forced" sale, and that the deed was recorded on April 11, 2012 at Deed Book 1004, page 321.

26.     The receipt from this sale from Berkeley County shows the Recorded Date as 4/11/2012, Book-Page 1004-321, with the total received of $17.00.

27.     The Heavners transferred their interest, such as it was, in non-existent Parcel 72 to Respondent Lusmilo Sanches by deed dated May 25, 2012 as part of a deed transferring five (5) other parcels from the Heavners to Sanches. The total consideration for all six (6) parcels is listed in the deed as $50.00.

28.     Following the filing of the initial complaint, however, newly added Respondent, Robert D. Heavner, produced a previously unrecorded deed indicating that he, not Lusmilo Sanches, owned non-existent Parcel 72, recorded on March 16, 2020 in the Office of the Clerk of the County Commission of Berkeley County in Deed Book 1280 at page 173.

29.     For the years leading up to the year 2005, Beglen's tax ticket for Parcel 71 listed the acreage as 0.59 acres. Beglen's tax tickets for the years 2005 thru 2019 incorrectly listed the acreage as 0.27 acres. Beglen has always paid the tax bills in full, but the records incorrectly show 0.27 acres (Parcel 72) having unpaid taxes. Beglen was unaware of any change of the acreage in her tax bills because the tax amount due had increased, and she never received any tax bill for Parcel 72.

30.     The true owner of the actual, physical land in question was and is Ramona Beglen. Her Parcel 71 includes the land which is described in non-existent Parcel 72.

31.     The Assessor believes that it is appropriate to petition this Court for permission to correct the error made by his predecessors in office that gave rise to non-existent Parcel 72.

32.     The Assessor believes that the correct solution is to remove non-existent Parcel 72 as a separately existing Parcel in the land maps and records. Continued assessment of non-existent Parcel 72 was a mistake; it should never have been separately assessed following the merger created by the conveyance from the Burkes back to the Ritenours in 1965.

33.     Attorney Randall Conrad was retained by the Berkeley County Assessor's Office to clarify an apparent overlapping assessment for Parcel 71 and Parcel 72. His Affidavit states:

1.     My name is Randall R. Conrad, II, and my place of business is The Conrad Law Firm, L.C., 115 Aikens Center, Suite 21, Martinsburg, West Virginia 25404.

2.     I am an attorney first admitted to practice in West Virginia on September 25, 1992, and am licensed to practice law in this State with West Virginia State Bar ID Number 6019. My practice includes land transactions and title examinations for properties located in Jefferson, Berkeley, Morgan, and other counties in West Virginia.

3.     I was retained by the Berkeley County Assessor's Office in 2017 to attempt to clarify an apparent overlapping assessment for Parcels 71 and 72 in the Opequon District, Map 16.

4.     I have examined title to the aforesaid parcels and found no irregularities in the chain of deeds except Parcel 72.

5.     Parcel 72 on the Assessor's Card shows an erroneous chain of title. Its present title chain arises from several deeds, the first tax sale deed being from McDougall, Deputy Commissioner, to Benton dated December 12, 1974, Deed Book 284, Page 652, and there have been similar tax sale deeds since then.

6.     The short lived land area known historically as Parcel 72 (70' frontage on Shepherdstown Road) arose from a deed between Ritenour and Burke in 1959 (Deed Book 222, Page 259), and was merged back with an adjoining parcel by the Deed from Ritenour (who had re-acquired it) to Sirk in 1965 (Deed Book 228, Page 298), and such merged parcels (140' frontage on Shepherdstown Road) were conveyed to Beglen (Deed Book 233, page 143) in 1967.

7.     When such merger deed was filed, Parcel 72 should have ceased to exist, since the land previously representing such Parcel 72 was included as part of Parcel 71.

8.     The erroneous assessment occurred in 1968. The error was that the land area constituting former Parcel 72 (a parcel starting at Point 5, the corner of Lots 2 and 3 of the Van Metre Survey, and fronting 70' on Shepherdstown Road) was deeded to the owner of Parcel 71 (a parcel starting at Point 5, the corner of Lots 2 and 3 of the Van Metre survey, and fronting 140' on Shepherdstown Road), together with an adjoining parcel, as a merger of each parcel into one tract (the merger was of two 70' frontage tracts creating a 140' frontage tract), and should have been deleted from the card, voiding the total assessment of such Parcel.

9.     In my opinion, the assessments of Parcel 72 after 1968 have been erroneous.

34.     Attorney Alice Chakmakian was retained by Beglen to research the title to Beglen's property located in the Opequon District, Tax Map 16, Parcel 71, with the postal address of 5028 Shepherdstown Road, Martinsburg, West Virginia, 25405, among the land records in the Office of the Clerk of the County Council of Berkeley County, West Virginia. Her Affidavit states:

1.     My name is Alice Anne Chakmakian and my place of residence is 200 East German Street, Shepherdstown, West Virginia.

2.     I am an attorney first admitted to practice in West Virginia on October 15, 1997, and am licensed to practice law in this State with West Virginia State Bar Identification Number 7535. My practice includes land transactions and title examinations, and I am a licensed agent for Fidelity National Title Company. Since

1997 I have searched hundreds of titles to properties located in Jefferson, Berkeley, Morgan, and other Counties in West Virginia.

3. As requested by Respondent, Ramona J. Beglen, I have researched the title to the property located in the Opequon District, Tax Map 16, Parcel 71, with the postal address of 5028 Shepherdstown Road, Martinsburg, West Virginia, 25405, (hereinafter referred to as "subject property") among the land records in the Office of the Clerk of the County Council of Berkeley County, West Virginia.

4. Ms. Beglen purchased the subject property in 1967 with her husband William B. Beglen as joint tenants with the rights of survivorship from Eugene L. Sirk and Virginia C. Sirk. The deed conveying the subject property to the Beglens was recorded in the aforesaid Clerk's Office in Deed Book 233 at page 143. Upon Mr. Beglen's death April 7, 2007, pursuant to the joint tenancy, Ms. Beglen became the sole owner of the property.

5. Since the date of the purchase of the property in 1967, the Beglens have used the property as security for various loans from various banks, as follows:

(a) Deed of Trust to Cunningham, Trustee for the benefit of the Administrator or the Veterans Administration, dated May 3, 1967, recorded in the aforesaid Clerk's Office in Deed of Trust Book 146 at page 295. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 148 at page

(b) Deed of Trust to Hammond, Trustee for the benefit of F&M Bank-Martinsburg, dated September 16, 1997, recorded in the aforesaid Clerk's Office in Deed of Trust Book 661 at page 183. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 316 at page 149.

(c) Credit Line Deed of Trust for the benefit of the Secretary of the U.S. Department of Housing and Urban Development, dated September 4, 2005, recorded in the aforesaid Clerk's Office in Deed of Trust Book 1756 at page 442. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 358 at page 165.

(d) Credit Line Deed of Trust to Crawford, Trustee, for the benefit of Wells Fargo, dated September 4, 2005, recorded in the aforesaid Clerk's Office in Deed of Trust Book 1756 at page 433. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 357 at page 119.

(e) Deed of Trust to Trump, Trustee, for the benefit of CNB Bank, dated June 1, 2011, recorded in the aforesaid Clerk's Office in Deed of Trust Book 2562 at page 129. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 420 at page 568.

(f) Deed of Trust to Trump, Trustee, for the benefit of CNB Bank, dated May 2, 2012, recorded in the aforesaid Clerk's Office in Deed of Trust Book 2644 at page 130.

(g) Deed of Trust to Trump, Trustee, for the benefit of CNB Bank, dated September 22, 2014, recorded in the aforesaid Clerk's Office in Deed of Trust Book 2898 at page 403. This deed of trust was released by a release recorded in the aforesaid Clerk's Office in Release Book 529 at page 56.

6. There have been no other conveyances of the subject property, other than to the Trustees of the Deeds of Trust listed in Item 5 above, since the Beglens purchased the subject property in 1967, and fee simple title to subject property has been in the name of Ramona Beglen and her husband until he passed away, leaving Ramona Beglen the sole fee simple title owner of the subject property.

7. The deed conveying the property to the Beglens used the following description:

"Beginning at a stake (4) on the southern side of W.Va. Route 45, and a corner between Lot No. 2 and Lot No. 3; thence with said public road N. 61 deg. 1' W. 140 ft. to a point, a corner with lands of Weller; thence with Weller S. 24 deg. 27' W. 183.6 ft. to a stake in the line of Griffith; thence with Griffith S. 70 deg. 140 ft. to a stake (9), a corner between Lots Nos. 2 and 3; thence N. 24 deg. 27' E. a distance of 158.9 ft. to a stake (4), the point of beginning; and being part of that certain real estate shown on the plat of Thomas H. VanMetre Lots, made by J. Jas. Skinnner, Surveyor, dated November 9, 1957, and recorded in the Office of the Clerk of the County Court of Berkeley County, West Virginia, in Deed Book 207, page 235." This description is the same description used in the conveyance to the Sirks when they purchased the property from Claude M. Ritenour and Glorietta Ritenour in 1965 according to a deed recorded in the aforesaid Clerk's Office in Deed Book 228 at page 298. Neither of these deeds provide the acreage of the subject property.

8. The subject property was a part of a larger parcel that was first subdivided into 3 lots by virtue of a plat recorded in 1957 in the aforesaid Clerk's Office in Deed Book 207 at page 235 (See Exhibit A). The subject property is contained entirely within Lot No. 2 on said Plat.

9. Lot No. 2 was further divided and reconfigured over the years pursuant to the following deeds as follows:

(a) By virtue of a deed dated September 25, 1959, and recorded in the aforesaid Clerk's Office in Deed Book 211 at page 264, all of Lot No. 2 and an additional area out of Lot No. 3, 10 feet

in width and abutting the entire boundary line of Lot No. 2 and Lot No. 3 was conveyed to Claude M. Ritenour and Glorietta Ritenour. (See Exhibit B)

(b)     By virtue of a deed dated September 29, 1959, and recorded in the aforesaid Clerk's Office in Deed Book 211 at page 430, the Ritenours transferred a parcel 70 feet in width and 158.9 feet in length to Richard B. Weller and Geneva Weller. This parcel conveyed included part of the original Lot No. 2 from the aforementioned plat and part of the additional area out of Lot No. 3 that was also conveyed to the Ritenours in the previously mentioned deed. (See Exhibit C)

(c)     By virtue of a deed dated June 13, 1960, and recorded in the aforesaid Clerk's Office in Deed Book 213 at page 294, the Ritenours transferred a parcel 70 feet by 24.7 feet by 70 feet by 34.8 feet to Richard B. Weller and Geneva Weller. This parcel conveyed included part of the original Lot No. 2 from the aforementioned plat and part of the additional area out of Lot No. 3 that was also conveyed to the Ritenours, as previously described in paragraph (a). (See Exhibit D)

(d)     By virtue of a deed dated September 29, 1959, and recorded in the aforesaid Clerk's Office in Deed Book 222 at page 299, the Ritenours transferred a parcel 70 feet in width and 158.9 feet in length to Thomas R. Burke and Nancy R. Burke. This parcel is entirely within the original Lot No. 2 from the aforementioned plat. (See Exhibit E)

(e)     By virtue of a deed dated August 30, 1965, and recorded in the aforesaid Clerk's Office in Deed Book 228 at page 277, the Burkes transferred the property transferred in paragraph (d) above back to the Ritenours.

(f)     By virtue of a deed dated September 4, 1965, and recorded in the aforesaid Clerk's Office in Deed Book 228 at page 298, the Ritenours conveyed a parcel 140 feet by 183.6 feet by 140 feet by 158.9 feet to Eugene L. Sirk and Virginia C. Sirk. This parcel includes the parcel that was conveyed to the Burkes from the Ritenours, as described in paragraph (d), and then back from the Burkes to the Ritenours, as described in paragraph (e), and all the rest of the original Lot No. 2 that was not conveyed to the Wellers in paragraphs (b) and (c) above. (See Exhibit F)

10.     I have also reviewed the Berkeley County tax map cards for parcels 71 (the subject parcel) and 72 provided by Petitioner in his pleadings. It appears that Parcel 72 was created with the transfer in 1965 to the Burkes described in paragraph 9(d). The tax card shows the transfer back to the Ritenours. After that transfer, the property is conveyed by tax delinquent sales leading up to when Robert Heavner first purchased the property by tax sale in 2012. The lot size box purports to show

dimensions for the lot, but neither the struck through dimensions, nor the dimensions shown in bold are the dimensions provided in the deed.

11. The tax map card for the subject parcel begins with the 1967 conveyance to the Beglens. The lot size box purports to show dimensions for the lot, but neither the struck through dimensions, nor the dimensions shown in bold are the dimensions provided in the deed.

12. The Berkeley County Assessor's land records in 2004 used the description for the subject parcel as ".59 ac Lot 2 10 ft Lot 1 TH VanMetre Lots" without explanation, the 2005 record uses the description ".27 ac Part of Lot 2 10ft of Lt 1 TH Van Metre Lots." The reference to the TH VanMetre Lots, in my professional opinion, refers back to the aforementioned plat in Item 8 above. There was no transfer or replat or resurvey recorded in 2004 to explain the change in acreage made by the Berkeley County Assessor between 2004 and 2005. Additionally, at no time did the subject parcel ever contain any part of Lot 1 TH VanMetre Lots. It does follow that the subject parcel would be larger than .27 acres, as described in the 2004 description, because the parcel that was conveyed back and forth between the Burkes and the Ritenours was .26 acres according to the aforementioned deeds and the subject parcel contains this parcel.

13. It is my opinion based on my research of the title to the subject property, to a reasonable degree of legal certainty, that no reason exists as to why the Berkeley County Assessor's Office would not have eliminated Parcel 72 when the land contained in that parcel was conveyed to the Sirks in 1965.

14. At no time was any part of the subject property conveyed to anyone other than as security for deeds of trust as described in paragraph 5.

15. A survey of the subject property was conducted by Allegheny Surveys, Inc., and a Plat of Survey was recorded on May 10, 2017 in Deed Book 1175, page 483, which shows the same parcel conveyed to the Beglens in 1967. (See Exhibit G.)

35. Respondent Ramona Beglen stated in her Affidavit as follows:

1. I am an adult and fully competent to make this Affidavit.

2. My late husband and I purchased our property on May 3, 1967, and the same was recorded in Deed Book 233 Page 143 on May 3, 1967, and more fully described in the deed as follows:

"Beginning at a stake (4) on the southern side of W.Va. Route 45, and a corner between Lot No. 2 and Lot No. 3; thence with said public road N. 61 deg. 1' W. 140 ft. to a point, a corner with lands of Weller; thence with Weller S. 24 deg. 27' W. 183.6 ft.

to a stake in the line of Griffith; thence with Griffith S. 70 deg. 140 ft. to a stake (9), a corner between Lots Nos. 2 and 3; thence N. 24 deg. 27' E. a distance of 158.9 ft. to a stake (4), the point of beginning; and being part of that certain real estate shown on the plat of Thomas H. VanMetre Lots, made by J. Jas. Skinner, Surveyor, dated November 9, 1957, and recorded in the Office of the Clerk of the County Court of Berkeley County, West Virginia, in Deed Book 207, page 235.

And being the same real estate which was conveyed unto the parties of the first part by Claude M. Ritenour and Glorietta Ritenour, his wife, by deed dated the 4th day of September, 1965, and recorded in the aforesaid Clerk's office in Deed Book No. 228, page 298."

3. I have paid all the real estate taxes on my property from 1967 to present.

4. I have never been delinquent on my real estate taxes.

5. I was unaware of any tax sales of my property, since I have never received any notice of any tax sales for nonpayment of taxes or non-entry on the land books of the Assessor's Office of Berkeley County, West Virginia, nor the State Auditor's Office, prior to any of the sales for nonpayment of taxes or non-entry on the land books.

6. I found out that there was an erroneous designation by the Assessor approximately in the spring of 2015, when Robert Heavner was trespassing on my property and directed to leave.

7. The erroneous designation was brought to the attention of the Assessor and Randy Conrad in 2015, 2016, and 2017.

8. On May 15, 2017 my daughter gave the Plat of Survey recorded on May 10, 2017 in Deed Book 1175 at page 483 to Randy Conrad, the attorney and agent for the Assessor.

9. All records of ownership of my property, such as deeds, tax bills and receipts, were burned in a fire at my home on May 16, 2020 which completely destroyed my home of 53 years.

10. There have been no out conveyances of any portion of my property described in Deed Book 233 at Page 143 since I acquired title on May 3, 1967.

11. At no time did I receive any notice that part of my property was being sold for nonpayment of taxes, non-entry on the land books by the Sheriff or the Deputy Commissioner of Delinquent and Nonentered Lands, or otherwise. I never

received any notice from Robert Heavner that my property was being sold by G. Russell Rollyson Jr., Deputy Commissioner of Delinquent and Nonentered Lands of Berkeley County, West Virginia on November 7, 2011.

## IV.  CONCLUSIONS OF LAW

The Court makes the following conclusions of law as fully discussed below:

### A.  All taxes that may have become due by means of an erroneous assessment on Parcel 72 have been released by the State of West Virginia

The methods and statutory procedures for sale of property for unpaid taxes is outlined in W. Va. Code § 11A-3-1, et seq. *See* also for a detailed explanation, the Law Review article: John W. Fisher, II, Delinquent and Non-entered Lands and Due Process, 115 WVLR 43 (Fall 2012).

We are concerned here with property that has been erroneously assigned a separate parcel number when no separate parcel existed, commonly referred to as phantom property, and how to resolve a claim by a tax purchaser from a sale by the Deputy Commissioner of Delinquent and Nonentered Lands, and prior void sales beginning in 1974.

West Virginia Code § 11A-3-73 states that all taxes that may become due or payable because of an erroneous entry is hereby released, and all title which was acquired by the State of West Virginia by forfeiture and subject to the authority and control of the Auditor because of such faulty entry is released back to the landowner (Ms. Beglen). W. Va. Code §11A-3-73 further states that the provisions of this section are remedial and shall be liberally construed for the relief of landowners.

West Virginia Code § 11A-3-73 states in its totality:

> In view of the large number of lots, parcels and tracts of land in this state which are entered on the land books by descriptions, or statement of interest or estate, or name of owner, or in a taxing district, which are erroneous or deficient in various particulars and the large number of lots, parcels and tracts of land in this state, and interests and estates therein, which appear on the land books by entries which have been or may be considered to be irregular, erroneous, invalid or void in

various particulars because of the way in which the name of the owner, the area, the lot or tract number or reference, the local description, the statement of the interest or estate and other particulars are stated, or because the entries are in the wrong taxing district; and the uncertainty which exists as to whether the payment of taxes thereon prevents the land intended to be assessed from having been forfeited for nonentry or be subject to the authority and control of the Auditor pursuant to section thirty-seven of this article; and in view of the necessity for permitting the owners of such land to pay taxes thereon in safety and to relieve from and avoid double payment of taxes on the same land in such cases, it is the purpose and intent of the Legislature to, and it hereby does, release all taxes and charges that may be or become due or unpaid, or considered to be or become due or unpaid, on any such lot, parcel or tract of land in this state for each year that the taxes charged thereon under such entry have been or shall be paid, even though the entry be entirely different in description or otherwise from the land intended or be completely deficient, provided the identity of the land intended by such entry can be ascertained. All title which has been acquired by the State of West Virginia by forfeiture of land or lands which are subject to the authority and control of the Auditor because of any such entry for any such year is hereby released and granted to the owner of such land in all cases where the identity of the land intended by such entry can be ascertained. No such entry heretofore or hereafter made for any such year shall constitute, or be considered to constitute, a failure of the owner of such land to have the same entered on the land books and to have himself charged with taxes thereon, or an omission of the same from the land books, or shall result in, or be considered to have resulted in a forfeiture for nonentry of the land or be considered to subject the land to the authority and control of the Auditor intended by such entry if the identity of the land intended by such entry can be ascertained. Such identity may be ascertained by any available evidence, parole or written, of record or not of record, including, but not limited to, tracing back prior years land book entries and valuations to a transfer to the present or a former owner, notations on the land books and other records in the office of the assessor for the current and prior years, conveyances to and from the present and former owners, and all pertinent evidence not within the foregoing classes. The provisions of this section are remedial and shall be liberally construed for the relief of landowners.

W. Va. Code § 11A-3-73 specifically releases all the property of Ms. Beglen from all prior tax sales because of the erroneous creation of Parcel 72, an admitted error by the Assessor, when no such conveyance had occurred to create a separate parcel. The tax sale for nonpayment of taxes and the sale by the Deputy Commissioner of Delinquent and Nonentered Lands to Heavner in 2012 is void, including all prior tax sales by the Sheriff for alleged non-payment of taxes on Parcel 72, because all prior taxes were paid. All tax sales from the beginning in 1974, including the tax sale

to Mr. Heavner, are therefore all void ab initio.

Respondent Robert Heavner is trying to profit from the mistake. The deeds provided to the Court show that he holds paper title to Parcel 72. That is the only reason Mr. Heavner is in this case: his name appears on the most recent tax sale deed from 2012. Shortly after acquiring the property in February 2012, Mr. Heavner then transferred the property to someone named Lusmilo Sanches in May of 2012. In November of 2012, however, Sanches turned around and gave Heavner a deed back for the same property. For some reason, Heavner did not record that deed until March 2020 – after this litigation began. While these transactions are somewhat unusual, it does not change the fact that the chain of title for Parcel 72 ultimately derives from tax sales. In his response, however, Mr. Heavner now seems to deny that his title is based on any relevant tax sale. He states that he "did not acquire the tract in issue from Beglen because of a tax delin[q]uency on her part" and that "[t]he flawed premis[e] that runs through and refutes Beglen['s] argument is that parcel in issue number 72 was lost by Beglen due to her failure to pay taxes prior to the land being acquired from the auditor."

In *Bailey v. Baker*, 137 W. Va. 85, 87, 68 S.E.2d 74, 75 (1951), the Court concluded:

"A tax sale under a void assessment, or where there is no assessment, and a deed made pursuant to such sale are void."

The Court concluded a tax sale under a void assessment, or where there is no assessment, and a deed made pursuant thereof is void, no matter the number of sales.

This clear law is perhaps why Mr. Heaver is now apparently denying that his title is based on a tax sale. But he cannot deny this because, of course, his deed *is* a tax sale deed. He attached his deed to his response brief, and that deed expressly says that the property was sold "for taxes delinquent."

W. Va. Code § 11A-3-73 has only been construed once, in the case of *MZRP, LLC v.*

*Huntington Realty Corporation*, No. 35692 (W.Va. Supreme Court, March 10, 2011) (Memorandum Decision), which concerned a purchase of a 100 acre tract of land at a tax sale conducted by the Deputy Commissioner of Delinquent and Non-Entered Lands.

The 100 acre tract of land erroneously changed landowner titles in 1949 to another company called Huntington Realty, when in fact there had never been a transfer of the property, like here. The taxes were paid by a third party who bought the property from the Deputy Commissioner of Forfeited and Delinquent Land, and the taxes had been paid by this third party from 1948 to 2005.

The Court held that the purchaser at the tax sale from the Deputy Commissioner, MZRP, could not get good title to the 100 acres because MZRP could not prove a clear, legal and equitable title to the land. The Court stated:

> "In West Virginia, a suit to quiet the title to a tax deed is authorized by W.Va. Code, 11A-3-62(b). However, before a court can enter an order removing any cloud on the title, the moving party, in this case MZRP, must prove a clear, legal and equitable title to the land. *Flynn Coal & Lumber Company v. FM White Lumber Corporation*, 110 W.Va. 262, 157 S.E. 588 (1931)."

*MZRP v. Huntington Realty Corporation*, No. 35692 (W.Va. Supreme Court, March 10, 2011) (Memorandum Decision), p. 6.

The Court further stated in *MZRP*:

> "The Legislature further provided in the last sentence of Section 73 that "[t]he provisions of this section . . . shall be liberally construed for the relief of landowners." It does not provide relief for "tax sale" purchasers. *See, Mingo County Redevelopment Authority v. Greene*, 207 W.Va. 486, 534 S.E.2d 40 (2000). It is clear that W.Va. Code, 11A- 3-73, does not allow a Deputy Commissioner's tax sale of real property under the circumstances reflected in the record before us, i.e., where land has been erroneously assessed under the name of a non-owner, but the assessment nonetheless paid."

*Id.* at 9.

The Court held that the tax deed granted to MZRP was void, and further stated that there

is no statute of limitations regarding void deeds:

> "While W.Va. Code, 11A-4-1, et seq., enacted a three-year statute of limitations on voidable deeds created by procedural irregularities, there is no statute of limitations regarding void deeds. "Once void, always void." *Leslie Equipment Company v. Wood Resources Company*, 224 W.Va. 530, 543, 687 S.E.2d 109, 122 (2009)(Ketchum, J., concurring)."

*Id*. at 10.

Mr. Heavner's argument that because he paid the taxes for more than ten consecutive years on phantom Parcel 72 provides him with title is clearly wrong.

As pointed out in *MZRP, LLC*, supra, the failure to give notice and the assessment under the name of a non-owner under W. Va. Code §11A-3-73 releases all taxes that may become due or payable because of an erroneous entry, and all title which was acquired by the State of West Virginia by forfeiture and subject to the authority and control of the Auditor because of such faulty entry is released back to the landowner. Heavner's deed dated February 29, 2012 is from the Deputy Commissioner of Delinquent and Nonentered Lands, an arm of the State Auditor.

It is clear that W. Va. Code § 11A-3-73 represents the legislature's intent to apply to situations such as Ms. Beglen's, where the property has never been transferred and there is no legitimate sale to a third party such as to constitute a basis for the Assessor to create a separate parcel, such as Parcel 72, when no separate parcel existed in the first place.

In W. Va. Code § 11A-3-73, the legislature states:

> "[I]t is the purpose and intent of the Legislature to, and it hereby does, release all taxes and charges that may be or become due or unpaid, or considered to be or become due or unpaid, on any such lot, parcel or tract of land in this state for each year that the taxes charged thereon under such entry have been or shall be paid, even though the entry be entirely different in description or otherwise from the land intended or be completely deficient, provided the identity of the land intended by such entry can be ascertained."

The legislature goes on to state:

"All title which has been acquired by the State of West Virginia by forfeiture of land or lands which are subject to the authority and control of the Auditor because of any such entry for any such year is hereby released and granted to the owner of such land in all cases where the identity of the land intended by such entry can be ascertained."

The statute seems to be designed to correct errors and omissions by assessors, such as here, and provides that no sales, especially the sale to Mr. Heavner in this case, transferred any title because no title was ever acquired by the Auditor of the State of West Virginia in the first place, since all prior taxes before the Auditor's sale had been paid.

Accordingly, any taxes due in any sale to Mr. Heavner for delinquent taxes and any title acquired from the Auditor's Office, by Mr. Rollyson, Deputy Commissioner of Delinquent & Nonentered Lands, are released as a matter of law, and further such sale to Mr. Heavner and his wife is void ab initio, because a deed once void is always void.

Further support of the legal construction of W. Va. Code § 11A-3-73 is supported by W. Va. Code § 11A-3-70, which is a statute releasing title to and taxes on lands in which all taxes are paid for ten consecutive years.

This statute states taxes that are paid for ten consecutive years releases all taxes prior to such ten-year period, and all unpaid taxes prior to said ten-year period are declared to be fully paid.

Mr. Heavner has argued that he should benefit from this statute because he has paid the taxes for more than ten years on Parcel 72, however, as will be discussed in this Order, his failure to give "notice" to Ms. Beglen is a jurisdictional defect that cannot be overcome by a void deed.

Beglen paid the full taxes on all this property from the purchase date of 1967 through the year 2004, which is the first time that Parcel 72 appeared to have been issued a tax statement showing an acreage amount, i.e. .26 acres, which tax statement was never sent to Ms. Beglen.

Mr. Heavner's response brief is often difficult to understand. However, he seems to put

some emphasis on the fact his tax deed came after Ms. Beglen's undisputed property (Parcel 71) was reduced in the land records from .59 acres to .27 acres in 2005. Mr. Heavner does not actually attempt to explain why this reduction happened or why it is relevant, but any argument based on this unexplained reduction in parcel size is foreclosed by the very tax sale deeds that Mr. Heavner has provided to the Court.

Mr. Heavner's deed, which he received in 2012, describes the property as being .26 acres and Lots 1 & 2 of the Van Metre Lots formerly owned by Kenneth Albert. Mr. Albert's deed – which is from 1996 – contains the same description and states that the parcel was previously owned by Rachel Crider. The same lot size and description is also carried back through Ms. Crider's deed which is dated from 1982 and which mentions the previous owner, Eugene Benton. Mr. Heavner also provided Mr. Benton's deed, which also mentions the same lot size and description. Mr. Benton's deed is dated from 1974 and that was the first tax sale deed found by the title researchers in this case.

None of these deeds mention Ms. Beglen or any supposed failure on her part to pay taxes. And that is exactly what one would expect: the initial creation of Parcel 72 was due to an error, not Ms. Beglen's failure to pay taxes. In fact, Mr. Heavner admits that Parcel 72 was sold in 2008 (after the 2005 reduction in assessed size) in the name of Kenneth Albert – not Ramona Beglen. It is therefore simply not possible that the 2008 sale had anything to do with the 2005 reduction in assessed size.

But the above-listed series of deeds nevertheless constitutes Mr. Heavner's paper chain of title for Parcel 72 as he received it in 2012, and it is the only reason he has any standing in this case. And because his chain of title stems from the 1974 tax deed and all preserve the same lot size and description through Mr. Heavner's 2012 deed, then any change in lot size on paper in

2005 has no bearing on this matter. The series of tax sales and deeds were based on the original mistake from the 1960s which resulted in the tax sale and deed to Mr. Benton in 1974. That is where Heavner gets any supposed basis to appear in this case. This means that not only were all such deeds void based on the authority cited in the previous sections, but any change in Ms. Beglen's assessed lot size which may be reflected land books for 2004 or 2005 is a red herring: it was never the basis for any sale; it is not mentioned in any deed; and, it has nothing to do with this case.

The Court concludes that all taxes that may have become due or payable because of an erroneous entry have been released by the State of West Virginia, and all title which was acquired by the State of West Virginia by forfeiture and subject to the authority and control of the Auditor because of such faulty entry is released back to the landowner, here, Respondent Beglen.

### B. Beglen received no notice of any tax sale, neither a sale by the Sheriff for nonpayment of taxes nor from the Deputy Commissioner's sale of delinquent and nonentered properties, from which Mr. Heavner purchased Parcel 72. Failure to give the required notice to the owner (Beglen) is a jurisdictional defect, not subject to being cured

It is undisputed that Beglen never received any notice of any claimed sale of her property for delinquent taxes from 1974 through the date of this presence.

When Mr. Heavner purchased Certificate Number 021342, referred to as Parcel 72 in this litigation, the only notice sent from the State Auditor's Office was the Notice to Redeem Form sent to Kenneth R. Albert, 55 Scrabble Road, Martinsburg, West Virginia.

Mr. Heavner concedes that he gave no notice to Ms. Beglen. He states that fact on page 4 of his Factual Assertions in response to Ms. Beglen's Motion for Summary Judgment:

> "It is undisputed that Beglen never received any notice of any claimed sale of her property for delinquent taxes from 1974 through the date of this presence."

Mr. Heavner answered:

"Yes it is undisputed that Beglen never received any notice of any claimed sale of her property for delinquent taxes from 1974 through the date of this presence because the land books records did not have Beglen's name on the land books for Parcel #72. That is why the Beglens should have used the yearly report to declare all of their personal property and all of their real estate property that they owned each year, to protect themselves from this kind of problem, (back before the computer age).

When Heavner purchased Certificate #021342 referred to as Parcel #72, in the litigation, the only notice sent from the State Auditor's Office was the Notice to Redeem Form, sent to Kenneth R. Albert."

Beglen resided on this property since 1967. Parcel 72 was a small part of her half acre lot and part of her yard. Parcel 71 and Parcel 72 had the same address.

The failure to give the notice required by the statutory procedure set up by W. Va. Code § 11A-3-1 et seq., which must be strictly complied with, means that under the statute § 11A-3-19 the purchaser, here Mr. Heavner, loses all the benefits of his purchase.

In *Archuleta v. US Liens, LLC*, 813 S.E.2d 761 (2018), the Court stated in their discussion:

To start, we note that the Legislature has carved out detailed statutes that regulate every aspect of the sale of real property for delinquent taxes and the redemption of such property. *See* W. Va. Code § 11A-3-1 et seq. We have previously observed that "this area of the law has undergone significant change in the last several years, with each change increasing the protections afforded the delinquent land owner." *Mingo Cty. Redev. Auth. v. Green*, 207 W. Va. 486, 491, 534 S.E.2d 40, 45 (2000). Many of the changes in this area of the law took place after a decision by the United States Supreme Court recognized certain constitutional due process notice requirements for owners of real property subject to delinquent tax sales. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706 2712, 77 L.Ed. 2d 180 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the ... property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable."). This Court adopted the federal constitutional standard in *Lilly v. Duke*, 180 W. Va. 228, 376 S.E.2d 122 (1988), where we held:

There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice

by mail or other means as certain to ensure actual notice.

Syl. pt. 1, *Lilly*. Although *Lilly* addressed the issue of due process notice to a property owner before a delinquent tax sale occurs, we have found that those constitutional protections are equally applicable to notice of the right to redeem property after a tax sale. *See Mason v. Smith*, 233 W. Va. 673, 680, 760 S.E.2d 487, 494 (2014).

*Id*. at 763.

The Court went on to state:

As a prerequisite to receiving a deed to property sold for delinquent taxes, W. Va. Code § 11A-3-19 requires the tax purchaser to "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice as provided in sections twenty-one [§ 11A-3-21] and twenty-two [§ 11A-3-22] of this article." (Footnotes added). The statute also makes clear that, *"[i]f the purchaser fails to meet these requirements, he or she shall lose all the benefits of his or her purchase."* (Emphasis added). Further, prior to 1994, the text of W. Va. Code § 11A-3-19 was contained in a former version of W. Va. Code § 11A-3-20. This Court held the following regarding the pre-1994 version of W. Va. Code § 11A-3-20:

Noncompliance with the mandatory requirements of West Virginia Code § 11A-3-20 (1983 Replacement Vol.) is a jurisdictional defect not subject to curative measures.

Syl. pt. 3, *State ex rel. Morgan v. Miller*, 177 W. Va. 97, 350 S.E.2d 724 (1986). In light of the fact that W. Va. Code § 11A-3-20 was rewritten in 1994, and its text was placed in W. Va. Code § 11A-3-19, we take this opportunity to now hold that noncompliance with the mandatory requirements of W. Va. Code § 11A-3-19 is a jurisdictional defect not subject to curative measures.

As we previously mentioned, and now hold, W. Va. Code § 11A-3-19 provides that a property owner must be served notice of the right to redeem property as outlined under W. Va. Code § 11A-3-22, and that failure to provide notice in the manner required will result in the tax purchaser of the property losing all benefits of the purchase. The Petitioner contends that the Respondent failed to comply with the "Occupant" notice requirement contained in W. Va. Code § 11A-3-22(d). The relevant text of this statutory provision provides as follows:

In addition to the other notice requirements set forth in this section, if the real property subject to the tax lien was classified as Class II property at the time of the assessment, at the same time the State Auditor issues the required notices by certified mail, the State Auditor *shall forward a copy of the notice sent to the delinquent*

*taxpayer by first class mail, addressed to "Occupant", to the physical mailing address for the subject property. The physical mailing address for the subject property shall be supplied by the purchaser of the tax lien pursuant to the provisions of section nineteen of this article.* W. Va. Code § 11A-3-22(d). (Emphasis and footnote added).

*Id.* at 764, 765.

This Court went on to discuss the "Occupant" requirement:

The "Occupant" requirement of W. Va. Code § 11A-3-22(d) was added in 2010. Although there is no legislative history explaining why the "Occupant" provision was added to the statute, it is possible that the provision was added in response to the 2006 decision by the United States Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed. 2d 415 (2006).

. . . .

The decision in *Jones* suggests that, before states may take property for delinquent tax purposes, due process may require mailing notice to the property addressed to "Occupant." West Virginia Code § 11A-3-22(d) makes this constitutional suggestion mandatory for redemption purposes.

In the instant proceeding, the record is clear in showing that the requirement under W. Va. Code § 11A-3-22(d), that redemption notice be mailed and addressed to the "Occupant," did not occur. The circuit court found that this noncompliance with the statute was harmless because the Petitioner would not have received the notice. However, the decisions of this Court have made clear that "the right of a landowner to have the statutory procedures complied with before he is deprived of his land is fundamental[.]" *Morgan*, 177 W. Va. at 106, 350 S.E.2d at 734. *See also* Syl. pt. 1, *Cook v. Duncan*, 171 W. Va. 747, 301 S.E.2d 837 (1983) ("Persons seeking to obtain complete title to property sold for taxes must comply literally with the statutory requirements."). To follow the logic of the circuit court would require rewriting the statute and omitting the "Occupant" notice requirement. This requirement is no less important than any of the other notice requirements set out under W. Va. Code § 11A-3-22. It is not the role of the courts to cherry pick which notice is important and which notice may be tossed to the curb. The role of courts is to apply the law fully, not to partially ignore it. It is for this reason that W. Va. Code § 11A-3-19(a)(5) clearly instructs courts that "[i]f the purchaser fails to meet these requirements, he or she shall lose all the benefits of his or her purchase ." Nothing could be any clearer. The circuit court was simply wrong in discounting the omission of the "Occupant" notice requirement. *See Koontz v. Ball*, 96 W. Va. 117, 121-22, 122 S.E. 461, 463 (1924) ("Those statutes which require notice to the owner ... of the tax purchase and of the time of expiration of the period for redemption are strictly construed in favor of the owner, and against the purchaser,

and, unless their provisions are literally complied with, the sale will be void.").

*Id.* at 766, 767.

It is obvious that had Mr. Heavner obtained a title attorney to check the title to this property, which was his option at the time that he advised the State Auditor's Office of the persons to whom to give notice (which only included Kenneth R. Albert, who had bought the property at a Sheriff's tax sale when all the taxes had been paid and which sale was void), he would have discovered the true owner of the property, i.e. Ramona Beglen. She resided on the property; it was part of her yard, and both parcels had the same address.

Having failed to do the actual title search through an attorney, and having been a sophisticated purchaser of tax sale property and knowing the procedures, as is apparent from his pleadings and arguments in this case, it is evident that Mr. Heavner's failure to provide the required notice to the owner of the property voids his purchase of this property.

Because Mr. Heavner purchased property pursuant to a void assessment and a void deed issued for the phantom Parcel 72, and since he did not comply with statutory requirements giving notice to the "Owners" of the property, i.e. Ramona Beglen, his purchase is void, his deed is void, and he loses all the benefits of his purchase as set forth in the holding of *Archuleta*, supra, where the Court states:

> "Noncompliance with the mandatory requirements of West Virginia Code § 11A-3-20 (1983 Replacement Vol.) is a jurisdictional defect not subject to curative measures."

*Archuleta*, supra, p. 764.

> "As we previously mentioned, and now hold, W. Va. Code § 11A-3-19 provides that a property owner must be served notice of the right to redeem property as outlined under W. Va. Code § 11A-3-22, and that failure to provide notice in the manner required will result in the tax purchaser of the property losing all benefits of the purchase."

*Archuleta*, supra, p. 765.

Since Beglen never transferred any of her property to a third party at any time after acquiring the .56 acres, and since Mr. Heavner failed to give Beglen, the owner of the property, notice as required by West Virginia statute, Mr. Heavner therefore has lost all the benefits of his purchase, and any arguments to the contrary are to no avail.

All tax assessments on Parcel 72 have been paid by prior tax sales or by Mr. Heavner after 2013, however, his deed is void because Parcel 72 does not exist as a separate parcel. *See* Assessor's Reply Brief at p. 7.

All of the prior sales before Mr. Heavner were tax sales pursuant to a void deed, since the taxes on the property had been fully paid, and under W. Va. Code § 11A-3-73 and § 11A-3-70, all liens on this property have been released and waived by the State of West Virginia.

It is admitted by Mr. Heavner that no notice was given to Beglen. Therefore, the attempt by Mr. Heavner to acquire her property without due process of law constitutes a direct violation of her rights under the West Virginia Constitution, the United States Constitution, and W. Va. Code §11A-3-1 et seq., which requires there be strict adherence to all the procedural requirements including notice, an essential element of due process.

The notice was a mandatory requirement and a jurisdictional defect not subject to curative measures, which requires that Mr. Heavner lose all the benefits of his purchase.

The Court concludes that Beglen received no notice of any tax sale, neither a sale by the Sheriff for nonpayment of taxes nor from the Deputy Commissioner's sale of delinquent and nonentered properties, which was purchased by Mr. Heavner, and that failure to give the required notice to the owner (Beglen) is a jurisdictional defect, not subject to being cured.

## C.     Mr. Heavner's filings concerning Bill King's Affidavit.

Mr. Heavner has also filed a motion to strike the affidavit of Bill King. As part of the recent summary judgment briefing, the Assessor submitted an affidavit from Mr. King in the Assessor's mapping department. The affidavit contained two relevant points: that parcel 72 was a mistake and that the Assessor's office has no additional records.

While those points are relevant, they are not new. The Court notes that it has previously reviewed affidavits from attorney title researchers who have reached the same conclusion about Parcel 72 being a mistake. Additionally, the Court has already adopted the discovery commissioner's finding concerning the non-existence of historical records. Moreover, even though all parties seem to agree that Parcel 72 was created by mistake, the motion for summary judgment asks the Court to resolve the case largely on different statutory grounds which are not discussed in the affidavit.

Finally on this point, Mr. Heavner alleges that the affidavit was not timely filed. While there may have been an inadvertent delay in mailing the affidavit to Mr. Heavner, the Court has now reviewed Mr. Heavner's own affidavits and arguments on the same points, including his specific, substantive objections to Mr. King's affidavit. The Court therefore finds that Mr. Heavner has had the opportunity to respond to the affidavit and the Court has adequately considered Mr. Heavner's position with respect to the affidavit. Therefore the Court is not persuaded by Respondent Heavner's Motion to Strike and it is DENIED.

## V. RULING

For the foregoing reasons, the Court **GRANTS** Respondent, Ramona Beglen's Motion for Summary Judgment on the basis of the aforesaid undisputed facts and applicable legal authorities, and holds that all the prior tax sales by the Sheriff for the nonpayment of taxes are **VOID** under the holding of the *MZRP* case.

Further, the Court finds that Respondent Robert Heavner's purchase of Parcel 72 from the Deputy Commissioner of Delinquent and Nonentered Lands by deed dated February 29, 2012 is **ORDERED VOID**, as no notice to the owner, Ramona Beglen, was given by Robert Heavner, and therefore Robert Heavner loses all benefit of his tax purchase, and because a void deed is always void, all deeds concerning Parcel 72 are void ab initio.

It is also **ORDERED** that the relief sought in this action by the Assessor is **GRANTED**. The Assessor is hereby authorized and directed to remove parcel 72 from Map 16, Opequon District, of the Berkeley County tax maps, land books and other public records in which it appears, and to provide a certified copy of the Order for recording with Office of the Clerk of the County Council of Berkeley County.

Upon Motion of Ms. Beglen to be reimbursed her attorneys' fees in this matter, the Court hereby **DENIES** said Motion. This case involves a governmental body's error which went unnoticed and compounded over a period of years. This governmental error led Mr. Heavner to take certain actions, at least initially. While Mr. Heavner has vigorously contested the position taken by Beglen and the Assessor's Office herein, the Court does not find Mr. Heavner's conduct in this litigation would justify awarding attorney's fees against him. If Ms. Beglen wishes to petition the Court to consider an award of attorney's fees against the Assessor's Office, she may file a motion to that effect, to the extent permitted by law. If so, the Court will set a briefing schedule and only convene a hearing if it appears that such may be helpful in reaching its ruling on that narrow issue. Otherwise, the Court's ruling is that each party shall bear his or her own costs and fees in this matter.

This is a Final Order. The Clerk shall transmit attested copies of this Order to all counsel of record and to any self represented party or parties, remove this matter from the Court's active docket and place it among causes previously ended.

**R. STEVEN REDDING**
**BERKELEY COUNTY CIRCUIT COURT**